### MARY ANN MAY ET AL. V. THE SAN ANTONIO AND ARANSAS PASS TOWN SITE COMPANY ET AL.

#### No. 3247.

1. **Brief—Practice in Supreme Court.**—An assignment not presented by a proposition under it and sustained by statement from the record may be considered as waived.

2. **Mistake, in Absence of Fraud.**—A court of equity may grant relief in case of a mutual mistake, but not on account of one entirely unilateral and in the absence of fraud. Applied to an effort to correct a deed when its terms were clear and understood by the grantee to express the agreement, and when the grantor had ample means of understanding it before executing it.

3. **Life-Estate.**—The holder of a life-estate in land may sell such interest, and the purchaser may enter and hold the land until the death upon which the estate terminates.

4. **Will, Construction of.**—Patrick May made a will. It defined the quantity each child was to be allowed, and declared that the portion given to each of his minor sons "shall be allotted and designated for them by the mother Mary Ann when they become of age, and to have the same valuation as the other children's lands." The will then proceeds: "All the remaining portions, parts, and parcels of my lands I give to Mary Ann May, my wife, to control and use as she may see proper in every respect as her own; and it is my desire that she may proceed to execute this my last will without bond or security. In case she marries after my death, then she shall be required to give bond and security for the property held in trust of my minor heirs, to-wit," etc. By codicil special devises were revoked and the wife requested to "give and set aside after his death" to his children, naming them, "each fifty acres to be designated by his said wife." The estate was in excess of all devises. Prior to setting apart to her children the shares devised, the widow by deed conveyed a small interest in a tract of land in fee. The conveyance was attacked for want of authority. *Held:*

1. That the widow having the power to designate the land for the minor children, could indirectly do so by designating land to her own use by sale, leaving sufficient to satisfy the rights of the children.

2. That the will conveyed to the widow in fee the excess over that left the children.

5.  **Conveyance in Fee.**—We think that under the statute (Rev. Stats., art. 551) it must clearly appear from the language (of the will in this case) that a less estate was intended to be created, otherwise the devise will be "deemed to be in fee simple."

APPEAL from De Witt.    Tried below before Hon. H. CLAY PLEAS-
ANTS.

The opinion states the case.

*Crain, Kleberg & Grimes,* for appellants.

*Proctor & Proctor,* for appellees.

MARR, JUDGE, *Section A.*—Appellants' counsel state the nature of the case as follows: "This is a suit to set aside certain deeds for fraud and mistake, and for want of power in the grantor to convey; also involving the construction of a will."

This statement conveys but an imperfect idea of the character of the action to any one not familiar with the facts and issues. As we understand the case from the record, the suit was brought by the appellant Mary Ann May and certain children of herself and her deceased husband Patrick May—some of the children being adult and one a minor—against the San Antonio and Aransas Pass Town Site Company (a corporation chartered under the laws of Texas) and J. P. Morris, to set aside and cancel two certain deeds made by Mrs. May to the San Antonio & Aransas Pass Railway Company, and conveying to the said railway company, in addition to "a right of way, sidings, and depot grounds (as defined in the deed), a one-half interest in 250 acres of land out of a certain half of a league of land which belonged to the said Patrick May in his lifetime; also another deed executed by Mrs. May to the defendant J. P. Morris, conveying to him a one-half interest in the remainder of the 250 acres of land not conveyed to the railway company; or in other words, one-fourth interest in such land.

The deeds to the railway company appear from their face to embrace 272 acres, including right of way and depot grounds, but are alleged by the plaintiffs to really describe 277¾ acres of land.    They bear date of June 22, 1887, and the deed to Morris is dated July 1, 1887.    The one-half interest in the 250 acres of land thus acquired by the railway company was subsequently conveyed to one Kennedy, and by him conveyed to the said Town Site Company.    The plaintiff's husband, Patrick May, had in his lifetime conveyed an easement of a right of way to the railway company, and agreed, or at least intended, to give the alternate lots and blocks in 250 acres of land, and as the defendants claim, this quantity was to be in addition to the right of way, sidings, and depot grounds.    The plaintiffs claim that the donation was intended to embrace but 250 acres in all.    Patrick May also made a

deed to his wife to 250 acres to be conveyed to the railway company, as was shown by evidence aliunde. The plaintiffs do not seek to annul the grant of the right of way and depot grounds (which was conveyed in fee by Mrs. May), but contend, that as this land is part of the 250 acres, and as the right of way is across the tract as conveyed by Patrick May, the same should be estimated in arriving at the quantum of land; and that the grant, as they say was intended by Patrick May, should be limited to 250 acres and no more for everything. It is not made to appear that the deed from Patrick May to his wife manifests any such intention. We have been unable to find the description of the land as contained in this deed in the record. The only description we have found is that the deed conveyed "250 acres in fee simple," etc. He had previously conveyed to the railway company the right of way, embracing about sixteen acres. It is also alleged by the plaintiffs that Mrs. May misunderstood the matters when she executed the above deeds to the railway company and to Morris, and that the defendants at the time fraudulently represented to her and induced her to believe that the deeds to the railway company only conveyed "one-half of 250 acres and no more, but that in truth and in fact said deeds as submitted by the defendants to Mrs. May conveyed one-half of 277¾ acres of land, consisting of one-half of said 250 acres conveyed by Patrick May to Mary Ann May and one-half of 27¾ acres of the adjoining land," etc. This result was reached by reason of the deeds from Mrs. May to the railway company conveying a half-interest in 250 acres over and above "the right of way, sidings, and depot grounds," which embrace about 22 acres, the remainder of the 27¾ acres being in a street, as shown by the testimony. The controversy, therefore, between the parties narrows itself down to a dispute about 13⅞ acres between the plaintiffs and the Town Site Company, and one-half of that quantity of land between them and the defendant Morris. There is no prayer for the recovery of the land, but to cancel the deeds and remove the cloud from the title of the plaintiffs.

The court below held, that there was no fraud upon the part of the defendants, and, in effect, that Mrs. May made the deeds with full knowledge of what she was doing and of the quantity of the land conveyed.

There is an assignment of error questioning the correctness of this conclusion of the District Court, but as there is no proposition under the assignment, nor any statement from the record in support thereof in the brief, the point might be deemed to have been waived. In any event, we are of the opinion that there is abundant evidence to support the ruling of the court below in this particular. The deeds were fully explained to her, and she was surrounded by friends and relatives when she executed the instruments, and kept one of them several days before acknowledging it. The land was described in the deeds, and a

map was annexed thereto showing the boundaries and location of the eastern boundary line of the town as claimed by the defendants, and where the court found that it had been in fact established. The defendants each paid a valuable consideration for the land, and defendant Morris paid $1687.50 to Mrs May.

It is also insisted by counsel for appellants (but without any distinct assignment of error upon that point), that the plaintiffs are entitled to recover upon the ground of mistake. It is very evident from what has already been said, that if there was any mistake it was entirely upon the part of Mrs. May, for the railway company certainly was not mistaken, but understood the transaction and intended that the conveyances should embrace 250 acres in addition to the right of way and depot grounds. There being no fraud, either express or implied, which induced the mistake, if any, upon the part of Mrs. May, the defendants are not responsible for the mistake, and the contract remains binding upon the plaintiffs if otherwise valid. A court of equity may grant relief in case of a *mutual* mistake, but not on account of one entirely unilateral and in the absence of fraud.

It only remains now to determine whether Mrs. May had lawful authority to convey more than 250 acres of the land, either under the deed from her husband to herself or in virtue of his last will and testament. The court below held, that the proof failed to show "that the land in controversy was not a part of the 250 acres" which had been conveyed by Patrick May to his wife Mary Ann May. If this conclusion is correct, that would, of course, be decisive of the case, and the judgment should be affirmed. But its correctness is challenged by the assignments of error. Without determining the point definitely, we will inquire whether the will of Patrick May conferred upon his wife authority to convey the land in dispute. If so, then the deeds are just as valid as if this land were in fact a part of the 250 acres conveyed by Patrick May to his wife. This question is sharply presented by the assignments of error and the exceptions of both parties to the conclusions of fact and law of the District Court. The seventh assignment is as follows: "The court erred in thus holding that plaintiff Mary Ann May had the power under said *will* to sell more than 250 acres as conveyed to her by her said husband Patrick May, by said deed of February 21, 1887."

The court below held, that Mrs. May only took a life-estate under the will in the land devised to her, a part of which is "the land in controversy," but that the possession of the defendants could not be disturbed during the lifetime of Mrs. May. It does not appear that the defendants are in possession of the land in controversy, and, as we have said, the suit is not to recover the possession of the land. If Mrs. May took a life-estate in the land, we have no doubt that she could legally convey that interest to the defendants, and that in such contingency the

owners of the fee could not disturb the defendants in the use of the land while she lives, as decided by the court below.   6 Am. and Eng. Encyc. of Law, 881, and notes.   But in this case, as both parties claim the land in controversy in fee, the judgment as rendered by the District Court might have the effect of forever barring the rights of those entitled to the remainder.   It would seem, therefore, that upon the views as entertained by the court below of the extent of Mrs. May's interest under the will, the judgment in any event in this case should have restricted the operation of the deeds from Mrs. May to the defendants to her life-estate in the land in controversy, and to this extent removed the cloud from the title of the other plaintiffs.   The above conclusion, however, was ·but an *additional* reason as given by the court below for deciding the case in favor of the defendants.

The appellees caused a special exception to be noted upon the record to the conclusion of the District Court that Mrs. May only took a life-estate in the land in dispute under the will of her husband.   They insist that she acquired the fee.   Is that position correct?   At the time of his death Patrick May owned as his separate property about 2600 acres of land.   In any event, there was greatly more than enough land to satisfy all of the devises to the children outside of the land conveyed by Mrs. May to the defendants.   Patrick May left at his death a number of children, all of whom were adults in legal contemplation, except the plaintiff Sarah C. May (who sues by her mother as guardian) and four sons, who were minors.   Looking to the will of Patrick May and the subsequent codicil, which was duly probated, we find that no particular or designated land is devised to any of the children, but the portion of each is defined and the selection and designation is, according to the will and codicil, to be made for them by the mother, Mrs. May.   She made no designation of any land for any of the devisees until some time *after* she had made and delivered the deeds to the defendants.   It appears that then she only designated the particular land for one of the devisees, the plaintiff Mrs. Lucy Simpson, who is a daughter of Patrick and Mary Ann May.   The designation was by deed, and the land conveyed to Mrs. Simpson, as claimed by the plaintiffs, includes the land in controversy.   "The deed is dated more than one year subsequent to the deeds to the railway company and Morris."   Neither, therefore, by the terms of the will and codicil nor by the designation of the widow, have any of the other children obtained any vested or exclusive right to the particular land in controversy.   Having made the above explanation, we will insert that portion of the will which determines the extent of the interest in the land devised to the wife Mary Ann.   After defining the quantity each child is to be allowed, and declaring that the portion given by the testator to each of his minor sons "shall be allotted and designated for them by his wife Mary Ann May when they become of *age,·* and to have

the same valuation as the other children's lands," the will proceeds as follows: "All the remaining portions, parts, and parcels of my land I *give* to Mary Ann May, my wife, to control and use as she may see proper, in *every respect as her own;* and it is my desire that she may proceed to execute this my last will without bond or security. In case she marries after my death, then she shall be required to give bond and security *for the property held in trust of all my minor heirs,* to-wit, John D., John A. F., Patrick E., and Valentine James May." About a year afterward, and shortly before his death, which occurred in March, 1887, he made the codicil and revoked any specific devise to the other children in question, and provided, as we have already stated, by way of "a request and last wish," that his wife should "give and set aside after his death to Lucy May (now Simpson), Laura, Ellen, Mary, and Sarah May, each fifty acres, to be designated by his said wife."

We are of the opinion that under the will Mrs. May was seized of fee in the land *in controversy* at the time when she made the deeds to the defendants, or at least was invested with and held the legal title to the land, and could therefore legally convey the fee simple title, as she did do, to the appellees, in the absence of any fraud upon the rights of the devisees participated in by the defendants. Danish v. Disbrow, 51 Texas, 235; Orr v. O'Brien, 55 Texas, 158.

Of course, the entire land was charged with a trust in favor of the other devisees, which the will enjoined upon her the duty of executing, and it is only the residue of the land that is devised to her in fee, as we think. As no specific land, however, was designated, as we have seen, to go to the children, but the selection and location thereof was left by the will to the discretion of Mrs. May, it follows, that if she took her portion of the land in fee under the will, then she could select and designate not only the particular portions or parts of the land which the children should have, but the locality of her own part also, and in that contingency could legally dispose of the land selected for herself as she might choose. Upon this right and power of the wife over the land the will imposes one restraint, viz., she must not convey away so much of the land as not to leave a sufficient quantity to satisfy every other devise as specified in the will for the benefit of the children. This she has not done nor attempted to do, as we have already stated.

No particular mode of designating the lands for the children is provided by the will, and we think that the act of making the deeds to the defendants by Mrs. May should be regarded as a designation by her of the land in controversy as a part of the land which she intended to select for herself and not for any of the other devisees. We think it amounted to such a selection or designation by necessary implication from the act of conveying the land absolutely as her own. We do not think that the terms of the will required her to first designate the lands of the children before she could sell any part of the land. The testa-

tor did not so instruct her nor specify any certain time for making the selection, except on behalf of his minor sons.    For these the selection should be made when they became of age.    This provision clearly indicates that Mrs. May might dispose of her interest in the land before making the selection for at least some of the children, for the will gives her the immediate right, upon the death of the testator, "to use and control the land in every respect as her own." This would include the power to sell it.    But, as we have seen, it is insisted that she acquired under the will no more than a life-estate in any part of the land, and therefore could not in any event convey it in fee.    There is no such express limitation in the will itself, as is usually the case where a life-estate only is intended.    The testator "gives" her the remaining portions of the land "to use and control as her own." He does not say "during the term of her natural life," or "as long as she shall live," etc.    Nor does he make any disposition of the residuary estate in the land after her death.    We think that it was the purpose of the testator, as gathered from the language of the will, to dispose of all of his land as well as to specify who should be the objects of his bounty, and to what extent, and thus leave nothing to descend by operation of law. This he did not do, if his wife should be restricted to a life-estate in the land devised to her.    Again, if he intended only to create a life-estate in her favor, why did he provide, in case she should marry again, that then she should be required to "give bond only for the property held in trust" for his sons who were minors?    This land amounted to only 400 acres.  The reason is apparent.  The testator knew that he had given the residue of the lands absolutely to the wife, and supposing that the adult children would demand and receive their portions before another marriage of the wife would occur, he intended to create a continuing trust to the extent of 400 acres in favor of these minors, and to provide for the protection of their interest.  He left the wife, however, free in reference to the land which he gives her, and does not even attempt to charge it with any trust in favor of any one, nor limit her power over it.    If he feared that the advent of a successor to his nuptial couch might lead the wife to squander and waste the property, and if he had only given her a life-estate, why did he not require security of her in that contingency in reference to the land which he devised to her as well as for that given to his infant sons?    The answer may perhaps be found in the fact that he recognized her right to do as she pleased with her own property which he had given to her in the same instrument, while the other land she held only in trust, as he declares. Article 551 of the Revised Statutes provides, that "every estate in lands which shall hereafter be  * * *  devised to one, although other words heretofore necessary at common law to transfer an estate in fee simple be not added, *shall be deemed* a fee simple, if *a less estate be not limited* by *express words*, or *do not appear* to have been devised by *con-*

*struction* or operation of law." We think that under this provision of law it must clearly appear from the language of the will that a less estate was intended to be created, òtherwise the devise will be "deemed to be in fee simple."

In view of what we have said, we conclude that Mrs. May had the legal authority in virtue of her husband's will to convey the land in controversy to the defendants, independent of the deed made to her to the 250 acres by Patrick May, and therefore that the judgment should be affirmed.

*Affirmed.*