HARRY v. HAMILTON et al.

(Court of Civil Appeals of Texas. Dallas. Feb. 22, 1913. Rehearing Denied March 15, 1913.)

1. REFORMATION OF INSTRUMENTS (§ 44*)—EVIDENCE—OMISSION OF PROPERTY.

Parol evidence is admissible to show that by mutual mistake of the parties to a deed land has been omitted which was intended to be conveyed.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 155, 156; Dec. Dig. § 44.*]

2. EQUITY (§ 76*) — LACHES — EFFECT OF COVERTURE.

Where a married woman has been a sufferer from a mutual mistake in a deed, her inaction and failure to discover the mistake after the delivery of the deed presents no defense, where the statute of limitations does not operate.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 241; Dec. Dig. § 76.*]

3. REFORMATION OF INSTRUMENTS (§ 45*)—EVIDENCE — SUFFICIENCY — OMISSION OF PROPERTY.

In a suit for reformation of a deed, evidence held to support findings that property was omitted by mutual mistake.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

4. REFORMATION OF INSTRUMENTS (§ 25*)—DEFENSES—FAILURE TO READ INSTRUMENT.

The mere omission to read or know the contents of a written instrument does not bar right to a reformation on account of mistake or fraud.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 84–90; Dec. Dig. § 25.*]

5. LIMITATION OF ACTIONS (§ 73*)—DISABILITY—COVERTURE.

Under Rev. Civ. St. 1911, art. 5690, and article 5708, providing that if a person entitled to bring an action other than those mentioned in articles 5672–5684 of said title, which relates to suits for recovery of land, be at the time the cause of action accrues a married woman, the time of such disability shall not be deemed a portion of the time limited for the commencement of the action, an action to reform a deed was not barred, where the land involved was the separate property of plaintiff, a married woman.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 399–412; Dec. Dig. § 73.*]

6. WITNESSES (§ 150*)—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED.

Where defendant and her husband executed a deed of community property to plaintiff, and the husband, dying, devised his half of the remaining community property to defendant, and plaintiff sued to reform the instrument, alleging that certain property was omitted by mutual mistake, the suit was not against defendant as heir or legal representative of the decedent within Rev. Civ. St. 1911, art. 3690, relating to testimony of transactions with decedents.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 560, 653–657; Dec. Dig. § 150.*]

7. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action to reform a deed as to property conveyed, the admission in evidence of an abstract of title showing ownership by defendant and her husband was harmless, where there was no pretense that they were not the owners.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

8. REFORMATION OF INSTRUMENTS (§ 44*)—EVIDENCE—ABSTRACT OF TITLE.

In an action to reform a deed as to the property conveyed, abstracts of title held to constitute such contemporaneous data as rendered them admissible on the question of what property the grantors intended to convey.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 155, 156; Dec. Dig. § 44.*]

Error to District Court, Dallas County; Kenneth Foree, Judge.

Action by Mrs. M. J. Hamilton and another against Mrs. F. E. Harry. From a judgment for plaintiffs, defendant brings error. Affirmed.

W. H. Clark, Edward P. Dougherty, and John F. Murphy, all of Dallas, for plaintiff in error. Spence, Knight, Baker & Harris, and Geo. A. Titterington, all of Dallas, for appellee.

TALBOT, J. Mrs. M. J. Hamilton joined by her husband, John Hamilton, brought this suit on December 1, 1910, against Mrs. F. E. Harry, a widow, to reform a deed so as to embrace in the transfer and conveyance thereby intended two lots or parcels of land situated in the city of Dallas, Tex., instead of one lot as therein described, the petition alleging that on the 13th day of October, 1902, J. M. Harry and his wife, the said Mrs. F. E. Harry, owned as community property said two lots fronting 50 feet on Main street in said city, and sold the same to Mrs. Hamilton as her separate property, and that by mutual mistake only one lot was included and described in the deed. The prayer of the petition is that plaintiffs have judgments removing cloud from Mrs. Hamilton's title, correcting the description of the land sold, and vesting title in plaintiff Mrs. M. J. Ham-

ilton to said lot No. 2D, and for such other relief as she may be entitled to. Defendant pleaded general and special demurrers, a general denial and not guilty, and specially, in substance, that her deceased husband, J. M. Harry, on October 1, 1889, purchased the lot described in the deed mentioned in plaintiffs' petition from Mrs. Harrison for the sum of $6,850; that on October 13, 1902, said J. M. Harry, joined by defendant, conveyed said lot to the plaintiff Mrs. M. J. Hamilton as her separate property for the sum of $6,000, which conveyance was delivered to, accepted, and recorded by plaintiff; that said sale and purchase was made by Mrs. M. J. Hamilton through her husband, the said John Hamilton, and that all verbal negotiations and agreements between the parties in reference thereto were embraced in said deed of conveyance dated October 13, 1902; that the language, terms, and provisions of said deed of conveyance are plain and unambiguous, and constitute the only contract then made and entered into between the grantors and grantee therein, and that plaintiffs have no right now to alter or change the same, so as to make it embrace or convey said lot No. 2D, as is sought to be done in this suit. Defendant further avers that plaintiffs' allegations to the effect that, by and through a mutual mistake on the part of plaintiffs and J. M. Harry and wife, said lot No. 2D was omitted from the description of the land embraced in said deed from J. M. Harry and wife to the plaintiff Mrs. M. J. Hamilton, are not true, and expressly denies that the parties to said deed intended that the description of the land therein should include said lot No. 2D, as well as the lot therein specifically described. Defendant further avers that she is now, and has been since the death of her husband, which occurred in 1903, the absolute owner in fee simple of said lot No. 2D; that plaintiffs by the plain and unambiguous language of the deed made to them by J. M. Harry and wife on October 13, 1902, were advised and informed as to what property said deed conveyed; that plaintiffs ascertained and did know the true state of facts in reference to the description of the land in said deed, or could have done so by the exercise of ordinary care and diligence at the time said deed was delivered, or prior to the death of J. M. Harry, and should not be permitted to prosecute this suit and recover upon their alleged cause of action, because the same is barred by the statute of four years limitation. The case was submitted on special issues, and, upon the findings of the jury being returned into court, a judgment was rendered in accordance with the prayer of the plaintiffs' petition, and defendant has brought the case to this court by writ of error.

The first, second, and third assignments of error are grouped in the brief, and complain that the trial court erred in refusing to instruct the jury to return a verdict in favor of the defendant. The principal contentions of the plaintiff in error, who for brevity will hereafter be referred to as defendant, are, as we understand, that (1) when a deed is executed to carry out a parol agreement for the sale of land, and the description of the land in the deed is plain and free from ambiguity, and through mistake, without fraud, such deed fails to convey all of the land understood in the verbal agreement to be deeded, the verity of the deed controls, and the courts are without authority to hear parol evidence and reform the deed so as to alter and extend its terms to include in it the land omitted; (2) the evidence in this case showing that the plaintiffs knew or should have known at least four years prior to the institution of this suit that the lot in controversy was not included in the deed accepted by them from J. M. Harry, they are now barred by the four-year statute of limitation from prosecuting this suit and reforming said deed, even if the alleged mistake was made; (3) equity will not grant relief to one who has been guilty of culpable negligence, and a party who seeks to reform a deed on the ground of mutual mistake must show that he used the means within his reach to ascertain the true state of facts and acted within a reasonable time, and if he neglects to avail himself of the opportunity so to do for eight years, as in this case, he will be denied such relief.

[1, 2] Neither of these contentions is in our opinion well taken. As we understand the rule, parol evidence is admissible to show that by a mutual mistake of the parties to a deed land has been omitted therefrom which was intended to be conveyed and that upon proper proof equity will correct such mistake, that especially where a married woman has been the sufferer from such a mistake her inaction and failure to discover the mistake after the delivery of the deed presents no defense when the statute of limitation did not operate. Mrs. Hamilton, it appears, owned as her separate estate a farm in Dallas county, south of Oak Cliff, comprising about 384 acres. J. M. Harry at the same time owned a lot 50 by 90 feet, facing north on Main street just west of the Houston & Texas Central Railroad track, together with certain vendor's lien notes, the lot being worth $6,000 and the notes $4,000, making a total of $10,000, the combined value equaling the value of Mrs. Hamilton's farm. Through the agency of James Guyton, representing J. M. Harry, a trade was arranged whereby Mrs. Hamilton was to convey to Mr. Harry her farm, and he was to convey to Mrs. Hamilton as her separate estate the Main street lot and the vendor's lien notes. The conveyance of the lot, through mutual mistake, failed to include all of the lot intended to be conveyed. The lot was unimproved. On the east side it had a two-story brick

building, and on the west side a two-story frame building. Mr. Harry had purchased it some years before, and stated to his agent, Guyton, that he paid $9,000 for it. The deeds into Mr. Harry show his purchase of the lot as claimed by plaintiffs in two fragments aggregating $9,000. Its lines are delineated upon the plat furnished by Harry's agent, Guyton, to John Hamilton, who acted for his wife in making the trade. The lot was described and pointed out to Hamilton as being a lot 50 by 90 feet, according to the testimony of J. J. Orchard, the plat, and the testimony of John Hamilton. Guyton, Orchard, and Hamilton went in company to the lot, and Guyton pointed it out, and it was measured by the other parties. The trade having been agreed upon, Harry furnished to John Hamilton for examination an abstract of title in two parts, Duncan's No. 5,420 covering lot fronting 50 feet on Main street and extending back between parallel lines to an alley, and Bowles Bros., No. 3,449, covering the same lot. The Bowles Bros. abstract shows to have been made up for and charged to J. M. Harry and to bear date contemporaneous with the Hamilton trade, and was evidently indicative of Harry's understanding as to the lot he was conveying to Mrs. Hamilton. Guyton delivered the abstracts to Hamilton. Hamilton never knew that Harry had bought the lot in two fragments until just before this suit was brought. Hamilton furnished the abstracts to his attorney for examination. Thereupon the attorney, Mr. Eaton, examined the title, and reported back to Hamilton that the title was in J. M. Harry before the trade was closed, whereupon Harry had his attorney prepare a deed of conveyance, executed it, and delivered it to Hamilton. In delivering the deed to Hamilton no one called his attention to the fact that it did not convey the entire 50-foot lot. He did not notice that it did not; in fact, did not examine the deed critically. Harry's attorney handed him the deed, and said, "Here is the deed and here are the notes;" and Hamilton gave to Harry's attorney the deed to the farm. The attorney stated in delivering the deed to Hamilton that it was for the 50-foot lot on Main street, and Hamilton accepted it, believing it so to be. Hamilton states that, when he got the deed, he looked at it casually; that "I didn't notice that the deed did not contain the little lot on the corner. I am not a real estate man. I have not had any training in surveying or in preparing deeds. I have not had any training in working out calls in the descriptions of land. I did not know what block the property was in, except so far as the map was concerned. I placed the deed on record. I didn't examine critically at that time. I was dealing with a man that stood very high here in Dallas, and I would have accepted a deed or any other paper from him without ques-

tion. I wouldn't scrutinize it. I wouldn't have when this deed was brought in here. It reads this way: 'A tract or parcel of land lying in the city of Dallas, Dallas county, being a part of the John Grigsby league survey, and known by the following metes and bounds: Beginning at a point on the south line 26 6 feet west,' and then goes on. I didn't read it through. I saw '25 feet to the northwest corner of lot,' and that is about as far as I got, 24⁵/₆ and 25¹/₆ feet makes 50 feet. I took this first call of 24⁵/₆ feet and added it to 25¹/₆ feet, and that made 50 feet. I am not familiar with technical descriptions. I couldn't run them out to save my life." The description in the deed drawn by Mr. Hexter was as follows: "Beginning at a point on the S. line of Main street, 25¹/₆ feet S. 76 W. from where the south line of Main street intersects with the southwest line of the Houston & Texas Central Railroad reservation, and running thence along the south line of Main street south 76 west 24⁵/₆ feet to the northwest corner of lot 2 in block D of Burford, Stemmons & Williams addition to Dallas," etc. In the year following the consummation of the sale J. M. Harry died. Before his death, he sold Hamilton brick with which to build a building on the lot. The building was constructed in 1903 or 1904, covering the entire lot. It remained there continuously until the building was destroyed by fire about 1911. After the building burned, Mrs. Hamilton had an opportunity to sell the lot, and, when the abstract was examined, the defective description was for the first time discovered. Request was made of Mrs. Harry to correct the deed, and this suit was brought. Mrs. Harry, who was sole legatee and independent executrix of the estate of J. M. Harry, after his death, filed inventory of the estate, and did not include any portion of the lot involved. It was dropped from the Harry assessment for 1903, and was not rendered for taxes nor paid on by the Harry estate after that year, but was paid by Mrs. Hamilton. A sworn assessment made by Mr. Harry's bookkeeper, Charles Wilmot, in 1903, did not include any part of the lot in question. Mrs. Harry and her grown sons, who assisted in managing her affairs, have lived continuously in the city of Dallas since the improvement of the property by Mrs. Hamilton by the erection of the brick building covering the entire 50-foot lot, and never made any criticism of or objection to her occupancy of the entire lot.

Upon the issues submitted the jury found that John Hamilton, acting for Mrs. Hamilton, made an agreement with James Guyton, acting for J. M. Harry, for the exchange of Mrs. Hamilton's farm for property and notes belonging to J. M. Harry; that such agreement was to the effect that Harry's entire 50-foot lot on Main street in the city of Dallas, Tex., was to be conveyed to Mrs.

Hamilton; that Mrs. Hamilton carried out her part of the agreement by making deed to J. M. Harry, conveying to him her farm; that the deed of J. M. Harry which was delivered to John Hamilton for Mrs. Hamilton did not convey all of the land that the parties agreed was to be conveyed; that the failure of the deed to convey all of the land agreed to be conveyed was due to the mistake either of J. M. Harry or to the party who prepared the deed for him.

[3] The judgment rendered by the court was authorized by the evidence adduced, the foregoing findings of the jury, and the law applicable thereto. Silliman v. Taylor, 35 Tex. Civ. App. 490, 80 S. W. 651, was a suit to correct a mutual mistake in the description of the property covered by an instrument of writing creating a mechanic's lien. The petition alleged that said instrument by the mutual mistake of the parties thereto described the property upon which the lien was given as lot No. 8, in block No. A2, subdivision A, etc., when, in fact, the property upon which the lien was given, and which was intended to be described, was lot No. 7, in said block. In holding that the petition in that case showed a good cause of action the court said: "The jurisdiction or power of courts of equity to relieve against mistakes has always been recognized and frequently invoked, and it is familiar law that equity will correct an erroneous description of property contained in a voluntary conveyance whenever the misdescription is due to the mutual mistake of the parties to the instrument. The exercise of this power in the correction of a mutual mistake in the description of property contained in the deed of a married woman conveying her separate property or her homestead in no way conflicts with the Constitution or laws of this state prescribing the manner in which such conveyances shall be executed. The correction of such mistake does not in the least change the voluntary character of the conveyance, or lessen in the slightest degree the protection which our Constitution and statutes are designed to give to the separate property and homestead rights of married women. When a conveyance had been properly executed by a married woman, the correction of a mutual mistake in the description of the property therein contained does not create a new contract, but merely makes the written evidence of the contract which has been legally executed speak the truth, and conform to the intention of the parties, in order that injustice and fraud may be prevented." The case of Kelley v. Ward, 94 Tex. 289, 60 S. W. 311, was an action to set aside a judgment and reform the written agreement on which it was based so as to free the plaintiff from the personal liability established thereby. The grounds upon which the relief was sought were, among others, that the written agreement, by the fraud of other party to it, or through the mutual mis-

take of both parties had been made to embody the provisions making the plaintiff personally liable for the debt, when such was not the contract as agreed upon, etc. In disposing of this case our Supreme Court held that "equity will grant relief against a mistake of both parties, by which, in an effort to reduce the agreement which they had made to writing, they misstate its terms so that the writing does not represent the real contract." In Wieneke v. Deputy, 31 Ind. App. 621, 68 N. E. 921, it is held that a mistake in a deed describing the "middle" instead of the "west" acre as the property conveyed was a mistake of fact, and not of law, and that parol evidence is admissible in suits for reformation of a deed to establish the fact of a mistake, in what it consists, and how the writing should be corrected to conform to the agreement made. That John Hamilton and Mrs. Hamilton did not read the deed or understand it does not seriously affect the question. In the case of Kelley v. Ward, supra, it is held that, where both parties are mistaken as to the effect of the writing and ignorant of its misstatement of the agreement, the failure of one to understand, through omission to read or give sufficient attention to its contents, cannot avail as a defense to the other, equally in fault, against a suit to correct such misstatement.

[4] In the case of Savings Institution v. Burdick, 87 N. Y. 40, the rule is expressed in the following language, which is quoted with approval in the Kelley v. Ward Case: "Indeed, in most of the cases to be found in the books, where relief has been sought against written instruments on the ground of fraud and mistake, the complaining parties were chargeable with the same kind of negligence which exists in this case, to wit, the omission to read or understand the contents of instruments executed or accepted. It has certainly never been announced as the law in this state that the mere omission to read or know the contents of a written instrument should bar any relief by way of a reformation of the instrument on account of mistake or fraud. It is the general rule that where a written instrument fails to conform to the agreement between the parties in consequence of the mutual mistake, however induced, or the mistake of one party and fraud of the other, a court will reform the instrument so as to make it conform to the actual agreement between the parties." It thus appears that relief will be extended either in a case where fraud has been practiced, or where the failure of the writing to express the real contract of the parties is occasioned by mutual mistake. In regard to the charge of negligence on the part of the plaintiffs the proof shows that when the deed in question was delivered to John Hamilton, who was acting for his wife, no one called his attention to the fact that it did not convey lot No. 2D, or the entire fifty

feet agreed to be conveyed; that he did not then examine the deed critically; that J. M. Harry's attorney handed him the deed, saying, "Here is the deed and here are the notes," and Hamilton gave to said attorney in return the deed of himself and wife to his wife's farm. The evidence further shows that Harry's attorney stated in delivering the deed to Hamilton that it was for the 50-foot lot on Main street, and that Hamilton accepted said deed believing it to be so. Hamilton testified that, when he got the deed, he looked at it casually; that "I didn't notice that the deed did not contain the little lot on the corner. * * * I have not had any training in working out calls in the descriptions of land. I did not know what block the property was in, except so far as the map was concerned. I placed the deed on record. I didn't examine it critically at that time. I was dealing with a man that stood very high here in Dallas, and I would have accepted a deed or any other paper from him without question." John Hamilton further testified, in substance, that his wife built a brick building covering the two lots intended to be conveyed by her in 1903 or 1904, and that this building remained there continuously until it was destroyed by fire in 1911; that the building was then destroyed, and Mrs. Hamilton had an opportunity to sell the lots, and, when the abstract was examined, the defective description was for the first time discovered.

[5] The right of Mrs. Hamilton to have the deed reformed so as to embrace lot No. 2D, which was omitted therefrom by the mistake of the parties, was not barred by the statute of limitation. As is contended by both the plaintiffs and defendant, the statute of limitation of four years is applicable to a case of this character, but during all the time intervening between the execution and delivery of the deed sought to be reformed and corrected and the filing of this suit Mrs. Hamilton was laboring under the disability of coverture, and the statute of limitations was not put in operation. The statute referred to provides: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterwards." This statute is found in article 5690, c. 2, title 87, of our Revised Statutes, and article 5708 of chapter 3 is to the effect that if a person entitled to bring an action other than those mentioned in chapter 1 of said title, which relates to suits for the recovery of land, be at the time the cause of action accrues "a married woman," the time of such disability shall not be deemed a portion of the time limited for the commencement of the action, and that such person shall have the same time after the removal of his or her disability that is allowed to others by the provisions of said title. It

was clearly shown, and is not denied, that the land involved is the separate property of Mrs. Hamilton, and her disability excluded the statute of limitation. In this respect the suit is materially different from those cases cited and relied on by the defendant. In neither of those cases, as we understand, was the property involved the separate property of a married woman. In other words, there was no question of coverture involved. Smith v. McElyea, 68 Tex. 70, 3 S. W. 258, was a suit in which the rights of a married woman were involved to cancel a deed charged to have been obtained by fraud, and brought about 14 years after the execution of said deed, and Associate Justice Stayton said: "It is shown by the petition that Mrs. Murphy was a married woman at the time the conveyance was made by her mother to D. T. Smith, and that she so continued until the institution of this suit, from which it follows that limitation could not have run against her." In the instant case, were it not for the coverture of Mrs. Hamilton during the period of time intervening between the execution and delivery of the deed to her and the filing of this suit, a very serious question would be presented as to whether or not by the exercise of reasonable care and diligence the mistake in her deed could and would have been sooner discovered, and that the failure to discover it was such laches or negligence as would deny her the relief sought. The defendant's pleas of limitation and stale demand, however, are fully met by Mrs. Hamilton's plea of coverture.

The rule invoked under the fifth assignment of error to the effect that parol evidence is inadmissible to contradict or vary a valid written instrument free from fraud or ambiguity has no application, as we have heretofore in effect held, to the facts of this case. Here the action is expressly brought to correct a mutual mistake of the parties to the deed in question, and make it conform to the understanding and intention of the parties. In such case parol evidence does not contradict or vary the written instrument, but reforms it so as to make it conform to the actual agreement of the parties.

[6] The objection to the testimony of John Hamilton in this connection, on the ground that the witness was a party to the suit, the transaction inquired about one with a decedent, and, under article 2302 of the statute, inadmissible, is not tenable. The suit is not one by or against the heir or legal representative of the decedent, Harry. The property before the sale to Mrs. Hamilton was the community property of Harry and the defendant in this suit, Mrs. F. E. Harry, she having by reason of that fact an absolute interest of one-half in it, and by his will Harry devised his half of said property to her. She therefore stands in the relation of a legatee or devisee, and "legatees or devisees" are not included in the exceptions of the stat-

ute. Therefore, Mrs. Harry not being sued as executrix or administratrix ·of her deceased husband, nor asserting any right to the property as his heir, article 3690, of the present statute, formerly 2302, is not applicable. Newton v. Newton, 77 Tex. 508, 14 S. W. 157; Evans v. Scott, 97 S. W. 116.

[7] Nor do we think the court committed material error, if any at all, in admitting in evidence, over the objection of the defendant, the abstracts of title shown to have been furnished by J. M. Harry or his agent, Guyton, and used in passing upon J. M. Harry's title to the lots, and the opinion of the attorney, Otis A. Eaton, to the effect that J. M. ·Harry "had a good and fee-simple title" to the property in controversy. If the opinion of Mr. Eaton was inadmissible as hearsay, or for any other reason urged by the defendant, the same resulted in no such injury to defendant as requires a reversal of the case. There is no pretense that J. M. Harry, at the time of the sale to Mrs. Hamilton, did not have title to the property in controversy.

[8] And as to the abstracts they constituted such contemporaneous data upon which the negotiations and consummation of the sale and purchase of the lots were in part based, as rendered them admissible to be considered by the jury in determining what property J. M. Harry really intended to convey.·

Upon the whole, we conclude the verdict and judgment rendered were amply supported by the evidence, that the assignments present no reversible error, and that the judgment should be affirmed.

It is therefore accordingly so ordered.