**BORDOVSKY et al. v. DOUGHERTY et al.**

No. 13556.

Court of Civil Appeals of Texas. Fort Worth.

June 4, 1937.

Rehearing Denied June 25, 1937.

Lyle Saxon, of Dallas, for appellants.

William C. Culp, of Gainesville, and Thompson & Barwise, George Thompson, Jr., and Luther Hudson, all of Fort Worth, for appellees.

BROWN, Justice.

On January 10, 1921, Mrs. Cora M. Crawford and her husband, M. H. Crawford, executed and delivered to Francis M. Dougherty a deed of gift, conveying 210 acres of land in Cooke county, Tex. The language of the deed brands it as a deed of gift, and there is no evidence or testimony to the contrary.

On April 20, 1928, F. M. Dougherty conveyed, by instrument in writing, an undivided one-half interest in and to the oil, gas, and other minerals in and under said tract of land to one S. J. Hogsett, said instrument having been recorded on April 25, 1928.

Prior to December 13, 1931, Reece A. Hays, a real estate broker, learning that Fred Ben Bordovsky, one of appellants here, was interested in purchasing the said tract of land, entered into negotiations with said Bordovsky, which resulted in a written memorandum covering the agreement on the one part of Bordovsky to purchase and the agreement of F. M. Dougherty, acting by and through his agent, Hays, to sell the said tract of land at the stipulated price, and this contract contains the following language, which is found in the last paragraph thereof: "It is understood by Mr. Bordovsky that one half of the oil and mineral rights on this place have been disposed of."

In compliance with the provisions of such contract of sale, Dougherty furnished Bordovsky an abstract of title covering the tract in question. The abstract of title discloses the conveyance by Dougherty of an undivided one-half interest in and to the oil, gas, and other minerals in and under said tract of land to S. J. Hogsett.

Bordovsky employed the Hon. Wm. C. Culp, of the city of Gainesville, in said Cooke county, and Mr. Culp, having examined the said abstract of title,. on December 20, 1933, gave to appellant Bordovsky a written opinion concerning the title to said tract of land, the second paragraph of which reads as follows: "S. J. Hogsett owns ½ of all oil, gas and other minerals in and under the above mentioned land."

Bordovsky desiring to consummate the deal, Hays, agent for Dougherty, instructed a Mr. Howeth, the abstractor of Cooke county who prepared the abstract covering the title, to prepare a warranty deed from Dougherty to Bordovsky. Mr. Howeth prepared such deed so that the grantors are shown to be F. M. Dougherty and wife, Penelope A. Dougherty, and same is dated December 13, 1933. This is a plain warranty deed covering the 210 acres of land in controversy, and no mention whatever is made of the mineral interests conveyed or of any reservation thereof.

The deed was sent to Dougherty and wife, who were then in Tucson, Ariz., and it was duly executed, acknowledged, and returned to the agent Hays for delivery, all of which was done.

On April 17, 1934, S. J. Hogsett, who owned, as above shown, an undivided one-half interest in and to the minerals in and under said tract of land, by instrument in writing conveyed all of such interest to Penelope A. Dougherty, and this deed was filed for record in Cooke county on March 30, 1935.

On January 29, 1936, Fred Ben Bordovsky and his wife, Ida Bordovsky, executed an oil and gas lease, conveying the tract

of land above mentioned to W. Frank Isham and L. W. Neilson, as lessees. On the very same day Bordovsky and Isham and Neilson entered into a written contract as follows:

"State of Texas

"County of Cooke

"This Contract and Agreement made and entered into by and between Fred Ben Bordovsky, party of the first part, and W. Frank Isham, and L. W. Neilson, parties of the second part, on the date hereinafter mentioned:

"Witnesseth:

"Whereas, in consideration of the execution of that certain oil and gas lease on 210 acres of land out of the S. D. Brown Survey, Abst. No. 94, and the A. C. C. Bailey survey, Abst. No. 44, in Cooke County, Texas, and more fully described in said lease in favor of said second parties, made subject to the following terms and conditions:

"Whereas, the said parties of the second part agree and bind themselves to engage an attorney at law to bring suit to remove cloud from title from said above land, said cloud being an outstanding mineral interest held out by preceding landowner thru the name of one S. J. Hogsett; and it being a condition precedent agreed upon that when, and if, said second parties are successful in removing cloud therefrom, they shall receive 100 acres of good and valid oil and gas lease in and on said above land, to be executed on 88 Producer's 5 year form, carrying one dollar per acre rental.

"Whereas, in event of failure of the said second parties to clear up title as above agreed, then and in that event, they hereby agree to surrender said lease to the said first party, releasing any and all of claims, real or imaginary back to the original source.

"Whereas, it is agreed that the action to be taken by the said second parties shall begin immediately, and prosecuted with due diligence to completion.

"Witness Our Hands in Duplicate This 29th Day of January A. D. 1936."

The undisputed testimony discloses that, in the event Isham and Neilson should win the suit contracted for in the above-quoted agreement, Isham and Neilson should have and retain the oil and gas lease on 100 acres of said tract of land and Bordovsky should have the remaining 110 acres free from any lease.

Acting under said contract. Bordovsky, Isham, and Neilson, as plaintiffs, brought suit in the district court of Cooke county against Dougherty and wife to recover title and possession of the entire tract of land and all mineral rights thereunder. In reply to such pleading, Dougherty and wife alleged that the execution and delivery of the deed, neglecting to mention the mineral rights and not reserving or limiting the mineral rights actually conveyed, was the result of a mutual mistake on the part of the contracting parties and they prayed for a reformation of such deed, to the end that same would show a conveyance by Dougherty and wife to Bordovsky of only one-half of the mineral rights in and under said tract of land.

Among other contentions, in answer to this cross-action by Dougherty and wife, Bordovsky, Isham, and Neilson alleged negligence on the part of Dougherty and wife in executing the deed which purported to convey the whole title and laches on the part of Dougherty and wife to assert any right to or interest in the minerals in and under said tract of land, and further seek to rely on the contention that, Dougherty and wife, having delivered to Bordovsky their joint warranty deed covering the whole of the title and without any reservation or limitation as to the mineral rights and Mrs. Dougherty, subsequent to the execution of such instrument, having acquired through Hogsett the undivided one-half interest in and to the mineral rights, the acquisition of such mineral rights by Mrs. Dougherty inured to the benefit of and the title to the same vested in Bordovsky by reason of the plain warranty deed executed by Dougherty and wife covering the whole of the title.

The case was tried to a jury and on special issues given the jury found, in substance, as follows: (1) That the contract between Hays, as agent for Frank M. Dougherty, and the prospective purchaser Bordovsky, was for the sale by Dougherty and the purchase by Bordovsky of the 210 acres of land and only one-half of the oil, gas, and minerals therein; (2) that the contract so entered into continued unchanged down to and including the time that the deed was executed and delivered by Dougherty and wife to Bordovsky; (3) that the omission of the clause limiting

the interests conveyed in said deed to one-half of the oil, gas, and minerals was the result of a mutual mistake of the parties thereto.

On this verdict, judgment was rendered by the trial court against the plaintiffs and in favor of the defendants, reforming the deed so as to make the same conform to the actual contract and agreement of the parties thereto.

Plaintiffs below, being aggrieved at such judgment, have appealed.

Seventeen assignments of error and seven propositions are urged in appellants' brief, but we do not feel the necessity of discussing all of the same minutely as this would unduly prolong this opinion.

Appellants' contention, tersely put, is that, under the undisputed facts adduced before the trial court, they were entitled to a peremptory instruction and appellants urge that, Dougherty and wife having given Bordovsky their unqualified warranty deed covering the premises in question, the effect of such deed is to pass the after-acquired title of the fractional mineral interest, which was vested in Mrs. Dougherty by the deed from Hogsett to her, and that Dougherty and wife are bound by their warranty. Furthermore, that, because of the carelessness and negligence of Dougherty and wife in not including a proper exception in their warranty deed with reference to the mineral rights, they are precluded and estopped to claim any reformation of the deed, and to assert any interest in the mineral rights; that Dougherty and wife, having failed to establish fraud perpetrated upon them at the time they executed the deed to Bordovsky, are precluded and estopped as aforesaid; that Dougherty and wife are guilty of laches and negligence and are therefore estopped.

Appellants' contentions are not well taken, and the authorities cited by them are not in point in so far as the case presented to us in this record discloses.

The evidence adduced raised the issues which were submitted to the jury and support the findings made by the jury. In addition to the evidence which has been shown in the opinion, supra, all of which is undoubtedly sufficient to support the giving of the special issues shown, the witness D. L. Monroe, who deals in leases and royalties, testified that he had a conversation with Bordovsky concerning the leasing of the land in controversy, said conversation having taken place about three months before any wells were brought in in the territory near the land in controversy, and that in such conversation Bordovsky told Monroe that he owned only one-half of the mineral rights and wanted to know if he would receive all of the lease money or just one-half of it, and that the witness told him what his rights were.

Appellee Dougherty testified that he did not examine the deed minutely; that he trusted in his agent, Hays, to prepare, or have prepared, a correct instrument; that he did not know of the error in the deed until about the date of the filing of this suit by the appellants; that he would not have executed the deed had he known that it erroneously attempted to convey the whole title, without limiting the mineral rights.

The agent, Hays, testified that he did not know the deed contained the mistake until about the time of the filing of the suit by appellants.

The evidence discloses that Bordovsky undertook to buy, and knew that he was purchasing, only one-half of the mineral rights under the lands in controversy.

One of the strongest facts and circumstances bearing out this issue is that Bordovsky did not care to assume the burden of bringing this suit, but contracted with his lessees and coplaintiffs, Neilson and Isham, so that they would assume the burdens imposed by the suit, and receive therefor a lease covering 100 acres, and obligate themselves to convey to Bordovsky the remaining leasehold rights on the 110 acres, all without cost to Bordovsky.

A mutual mistake, where a controversy goes to the courts, will not be readily established by the admissions of the party to be affected by the reformation of a deed or contract. Like a conspiracy, a mutual mistake is generally established from facts and circumstances surrounding the parties. The courts of Texas have long since recognized the equitable rule that deeds and other contracts in writing may be corrected by a court of equity because of a mutual mistake on the part of the parties thereto. Such cases as Harrell v. De Normandie, 26 Tex. 120, 121; Long Bell Lumber Co. v. Lowry (Tex. Civ.App.) 31 S.W.(2d) .345, and cases cited; Williston on Contracts (1922 Ed.)

vol. 3, p. 2750, § 1550; Elder v. First National Bank, 91 Tex. 423, 44 S.W. 62; May v. San Antonio & A. P. Town Site Co., 83 Tex. 502, 18 S.W. 959; Texas Pac. C. & O. Co. v. Crabb (Tex.Com. App.) 249 S.W. 835; Gilbert v. Smith (Tex.Com.App.) 49 S.W.(2d) 702, 86 A. L.R. 445, all recognize the equitable rule. Many other cases could be cited.

In the cases which recognize the equitable rule invoked here, we find that deeds have been reformed because of mutual mistakes, both where less land or smaller estates have been conveyed than were contracted for, and where more land or greater estates were conveyed than had been contracted for. There is no difference or distinction made between such cases.

The late Mr. Justice Talbot, of the Dallas Court of Civil Appeals, in the case of Harry v. Hamilton, 154 S.W. 637 (writ refused), in an able opinion, discusses and reviews many authorities. This case is as nearly "on all fours" with the case at bar as any that has come under our notice, and we specially cite this authority and rely thereon.

Finding no reversible error, the judgment of the trial court is affirmed.