TAYLOR COTTON OIL CO. v. EARLY–FOSTER CO. (No. 5904.)

(Court of Civil Appeals of Texas. Austin. May 1, 1918.)

1. CORPORATIONS ☞371—AUTHORITY.

A corporation has implied authority to do whatever is reasonably necessary to carry out the purposes of its existence.

2. CORPORATIONS ☞458—POWERS—CONTRACT TO SELL OUTPUT.

Under Rev. St. 1911, art. 1140, providing corporations have power to sell such personalty as their purposes may require, company chartered to do cotton oil business had power to estimate year's output of "linters," estimate being reasonable and in good faith, and to contract to sell output on such estimate, being bound to deliver number of bales estimated.

3. SALES ☞172 — FAILURE TO DELIVER—DEFENSE.

A cotton oil company which manufactured from 850 to 900 bales of "linters" during the season before which it contracted to sell 850 to 950 bales, took its chance as to any drought, and cannot defend the buyer's action for failure to deliver part of the contracted amount because the estimate fell short on account of drought.

4. SALES ☞1(4) — UNCERTAINTY IN AMOUNT.

A cotton oil company's contract to sell and deliver from 850 to 950 bales of "linters," being enforceable as to the minimum amount, was not void for uncertainty.

5. SALES ☞52(5)—MISTAKE—SUFFICIENCY OF EVIDENCE.

In action against cotton oil company for failure to deliver contracted number of bales of "linters" sold by it, evidence *held* not to show that contract was entered into by mutual mistake, at least by mistake on part of oil company.

6. CONTRACTS ☞93(5)—MISTAKE — MUTUALITY.

Mistake of one party to a contract is no defense, unless induced by fraud of other party.

7. CONTRACTS ☞147(2)—INTENTION OF PARTIES—LANGUAGE.

Where there is no ambiguity in a written contract, the intention of the parties is to be gathered from the language used.

8. APPEAL AND ERROR ☞1033(5)—HARMLESS ERROR—TOO FAVORABLE RULING.

Defendant appellant cannot complain of a ruling of the trial court unduly favorable to it, in that the action was for breach of contract, and an instruction allowed it the benefit of a mistake not mutual.

9. SALES ☞88—CONSTRUCTION OF CONTRACT —DUTY OF COURT.

It was the duty of the trial court to construe the contract of sale in suit.

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Suit by the Early-Foster Company against the Taylor Cotton Oil Company. From judgment for plaintiff, defendant appeals. Affirmed.

Melasky & Moody, of Taylor, and Sleeper, Boynton & Kendall, of Waco, for appellant. Nat Harris and Allan D. Sanford, both of Waco, for appellee.

### Findings of Fact.

JENKINS, J. Appellant and appellee entered into a contract whereby the appellant agreed to sell to appellee from 850 to 950 bales of linters, the estimated output of appellant company for the year 1915–16, at a stated price, subject to the rules of the Texas Cotton Seed Crushers' Association. Only a part of such linters were delivered. Appellee brought suit for the difference in the price agreed upon and the market price for such linters July 31, 1916, which, according to the rules of said association, was the end of the season of 1915–16, and was therefore the date on which appellant breached its contract. Judgment was rendered for appellee for the difference in the market price in the number of bales to be delivered according to said contract, less 15 per cent. thereof, and the number which were delivered.

### Opinion.

Appellant's first assignment is to the effect that the contract was ultra vires, in this: Its entire output of linters for the season of 1915–16 was 338 bales, all of which it delivered to appellee, and that it had no authority under its charter to contract for the sale of more bales of linters than it produced during the season.

Appellant is a corporation chartered for the purpose of doing a cotton oil business. A part of this business is shown to be to produce linters from cotton seed in the process of making cotton seed oil.

[1, 2] A corporation has implied authority to do whatever is reasonably necessary to carry out the purposes of its existence. Our statutes (Revised Statutes, art. 1140) provide that corporations have power "to purchase, hold, sell, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation shall require."

We do not think that appellant had the power, under its charter, to enter into the business of buying and selling linters on speculation; but, as it undoubtedly had the right to sell such linters as it manufactured, we think it had the power to estimate its output for a year, where such estimation is reasonable and made in good faith, and to contract to sell its output on such estimate, and in such event that it would be bound to deliver the number of bales estimated.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[3] We do not think there is any merit in the contention that the estimate fell short by reason of the unprecedented drought in the community where the oil mill is situated. The appellant is shown to have manufactured from 850 to 900 bales of linters during the previous season, and when it estimated that it would manufacture that number of bales in 1915-16 it took the chance as to the season.

[4] Appellant contends that the contract is void for uncertainty. With this we do not agree. A contract to deliver a number of bales, stating the minimum and maximum amount, is enforceable as to the minimum amount. Feuchtwanger v. Manitowoc, 187 Fed. 713, 109 C. C. A. 461; Indianapolis Cabinet Co. v. Herrman, 7 Ind. App. 462, 34 N. E. 579;. Schreiber v. Butler, 84 Ind. 576.

[5] Appellant also alleged that the contract was entered into by mutual mistake, and, if not by mutual mistake, then by mistake upon the part of appellant.

The contract provides for the sale of "850 to 950 bales (output) clean mill runs linters"; and further provides: "This contract is made subject to the rules of the Texas Cotton Seed Crushers' Association (rule 23, section 3 omitted)." The evidence shows that rule 23, section 3, related to the sale of oil, and not to linters; and that the rule relating to the sale of linters is rule 15, section 3, of said association. The secretary and president of appellant testified that they had conversation with Mr. Foster, of appellee company, over the phone, in which they agreed to sell linters to appellee at a price then agreed upon; that thereafter they received the written contract, and in reading it over discovered that rule 23, section 3, of the Cotton Seed Crushers' Association referred to the shipment of oil, and that they thereupon supposed that the party drafting the contract had made a mistake and intended to insert "rule 15, section 3 omitted," instead of rule 23. They did not, however, call appellee's attention to the supposed mistake, but signed the contract as it was written. This does not tend to show any mistake upon the part of appellee. Appellee testified that the contract was written upon a printed form intended to be used in the purchase of oil, and that there was no mistake on its part in inserting therein "rule 23, section 3 omitted." However, as rule 23, section 3, has no application to linters, the contract must be read as if this statement had been omitted therefrom, unless rule 15, section 3, should be inserted in lieu thereof.

[6] There is no ground for the contention of mutual mistake, and certainly there was no mistake upon the part of appellant, as it knew just how the contract read. A mistake on the part of one party is no defense, unless the same was induced by the fraud of the other. Finks v. Hollis, 38 Tex. Civ. App. 23, 85 S. W. 463; May v. Townsite Co., 83 Tex. 505, 18 S. W. 959; Brown v. Levy, 29 Tex. Civ. App. 389, 69 S. W. 255; Moore v. Studebaker, 136 S. W. 571; Box Co. v. Spies, 109 S. W. 432.

[7] Where there is no ambiguity in a written contract, the intention of the parties thereto is to be gathered from the language used. However, the court in its instruction to the jury allowed appellant the benefit of the supposed mistake. Rule 15, section 3, of the Cotton Seed Crushers' Association provides as follows:

"When a sale is made of season's or a balance of season's output of linters, the seller must ship, and the buyer must receive, all of the linters seller makes to the end of the season; provided, that when estimated number of bales is stated in contract, or any confirmation of sale or purchase, the buyer may demand, and the seller must ship, or make shipment whether demanded or not, 15 per cent. in excess of estimated quantity, if he makes a sufficient number of bales to enable him to do so, and buyer must receive and pay for same at contract price. Should seller not make the quantity estimated, he shall deliver the number of bales made. A shipment of 85 per cent. of the estimated quantity shall be deemed a fulfillment of the contract."

[8] As stated, the court gave the appellant benefit of this clause, and gave judgment for the difference between the number of bales shipped and 85 per cent. of 850 bales, the number estimated. Appellee does not complain of this ruling of the court, and certainly the appellant is in no condition to do so.

The contract sued upon is subject to the rules of the Cotton Seed Crushers' Association or it is not. If by reason of the fact that the rule with reference to oil was inserted, when the rule with reference to linters should have been inserted, the entire reference to the rules of the Cotton Seed Crushers' Association should be eliminated, then the contract is one absolutely to deliver the minimum of 850 bales. If the court had so construed it, it would have been more onerous on appellant than as construed. If only that part with reference to the Cotton Seed Crushers' Association referring to rule 23, section 3, be stricken from the contract, then appellant would not have been entitled to the 15 per cent. reduction which the court gave it by applying said rule.

[9] It was the duty of the court to construe the contract, and it did so most favorably to the appellant.

The court peremptorily instructed the jury to return a verdict for appellee, and in this there was no error.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.