PRICE v. BIGGS.    (No. 1587.)

(Court of Civil Appeals of Texas. Amarillo.
Dec. 10, 1919.)

1. MINES AND MINERALS ☞58—UNILATERAL
MISTAKE AS TO PERSON WITH WHOM LEASE
WAS MADE NOT GROUND FOR CANCELLATION.

That plaintiff had agreed to give gas and
oil lease to a person to be furnished by one
D., and that she executed a lease to defendant
lessee thinking she was dealing with D.'s pro-
spective lessee, was a unilateral mistake, af-
fording no ground for cancellation; there hav-
ing been no misrepresentation, the contract
terms having been fully agreed upon, and the
identity of the lessee not being of the essence
of the contract.

2. APPEAL AND ERROR ☞719(4) — WHERE
LEASE SOUGHT TO BE CANCELED WAS VOID ON
FACE SUSTAINING GENERAL DEMURRER WAS
FUNDAMENTAL ERROR.

If lease set out in hæc verba in petition for
cancellation was void on its face for want of
consideration, it was fundamental error ap-
parent of record on the part of the court to
sustain a general exception to the petition.

3. MINES AND MINERALS ☞58—OBLIGATION
OF OIL AND GAS LEASE MUTUAL AND NOT
UNILATERAL.

Under contract whereby plaintiff for con-
sideration of one dollar and a certain per cent.
of minerals "does hereby grant and convey to
said lessee the oil, gas, sulphur and other min-
erals under said land," lessee to begin and
prosecute the work of mining within a given
time, *held*, the obligations were mutual and not
unilateral.

4. MINES AND MINERALS ☞58—INCONSIST-
ENT PROVISION NOT RENDERING LEASE VOID.

Covenant to begin operation in drilling on
the land leased or the community lands in the
immediate vicinity by April 1, 1919, *held* not
so inconsistent with clause providing that con-
sideration for lease and for all common leases
is the covenant to begin actual development
on some part of the premises within 12 months,
as to require a holding that lease is void.

5. CONTRACTS ☞162—CONFLICTING CLAUSES
TO BE RECONCILED.

Apparent conflicting clauses must be recon-
ciled by a reasonable interpretation, and in
case of variance the one which contributes
most essentially to the contract is entitled to
the most consideration.

6. MINES AND MINERALS ☞58—OIL AND GAS
LEASE NOT VOID FOR UNCERTAINTY.

In gas and oil lease, an agreement that dili-
gent operations by lessee looking towards dis-
covery of gas and oil "in the immediate vicin-
ity, by which is meant within fifteen miles of
some portion of the land," shall operate as a
substitute for operation on the leased land,
*held* not so contradictory of a covenant to put
down a well in the immediate vicinity as to ren-
der the lease void for uncertainty.

Appeal from District Court, Childress Coun-
ty; J. A. Nabers, Judge.

Action by Mattie Price against E. R. Biggs.
Judgment for defendant, and plaintiff ap-
peals. Affirmed.

W. B. Howard, of Childress, for appellant.
Fires & Diggs and Jos. H. Aynesworth, all
of Childress, for appellee.

HUFF, C. J. Mrs. Price, appellant, in-
stituted this action against Biggs, appellee,
alleging she was a resident of Parker county,
and that appellee was a resident of Childress
county, Tex., and thereby seeks to rescind
and cancel a lease contract, which in sub-
stance stipulates that—

Mrs. Price, for the consideration of $1 paid,
and the covenants and agreements contained
therein, leased to Biggs 160 acres of land for
the purpose of prospecting for oil and produc-
ing same therefrom for the term of 5 years,
and as long thereafter as such minerals shall
be produced in paying quantities, and grants
with said land the exclusive right of ingress,
etc. "Subject to the royalties hereinafter men-
tioned, does hereby grant and convey to said
lessee the oil, gas, sulphur and other minerals
in and under said land." The royalties agreed
upon were certain percents of the respective
minerals. "The lessee agrees to begin the
drilling of an oil or gas well on said land (or
on land in the immediate vicinity as hereafter
defined) on or before the first day of April,
1919." Which the lessee was to diligently
prosecute to development until oil or gas was
developed, or by reason of the depth of the
well, abandoned, and stipulates that unless a
new well is begun within 30 days from the
abandoned well the lease should be null and
void. "If oil, gas or other minerals are found
in paying quantities then the lessee agrees,
obligates and binds himself to at once and with
due diligence develop the same to the extent
and to the end that all said community lease-
holds (and it is understood that the lands here-
in leased are a part of said community lease-
holds) are fully developed within a period of
five years from this date. This lease being one
of several leases secured by the lessee for the
purpose of enabling him to operate for oil, gas,
sulphur and other minerals over all the terri-
tory leased in the vicinity of the land herein
leased. The lessor agrees that diligent oper-
ations by the lessee looking to the discovery
of production of oil, gas, sulphur or other miner-
als in the immediate vicinity, by which is meant
within fifteen miles of some portion of the land
herein described, shall operate as a substitute
for operation on said leased land." The lease
provides for a reservation of a certain quan-
tity of land in case of legal forfeiture, etc. "It
is understood by the parties hereto that the
consideration for this lease and for all com-
munity leases herein mentioned, is the covenant
upon the part of the lessee that he will begin
actual development upon some portion of said
community lease within a period of twelve
months, and with due diligence proceed in the
development upon some portion of said commu-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

nity lease within a period of twelve months." And if the lessee fails to do so, or development is stopped for 90 days, "then this lease, as well as all of the community leases, are null and void, and of no further effect."

The facts set up by appellant for cancellation are, substantially, that at the time she executed the lease she was negotiating with M. J. Dwight for a lease on the land and had agreed to lease to the person that was to be suggested and furnished by Dwight, who was not known to appellant by name; that on the 23d day of January, 1919, just a few days after she agreed to give an oil lease to Dwight's party, she received through the mails the lease above set out in favor of Biggs; that she believed the lease was one she agreed to execute for Dwight in favor of the person named by him, and that it was executed under such erroneous belief and impression, and she had no intention of leasing to appellee, but, on the contrary, was under obligations to give a lease to the person to be so furnished, which she had in good faith agreed to give such party, and, having not been informed in whose name she was to execute the lease, she executed and delivered the lease to Biggs under the mistaken belief that she was carrying out her contract with Dwight. On January 25th she discovered her mistake and immediately wrote appellee, telling him of the mistake, and requested him to deliver the lease to the sheriff. She also alleges that she received no consideration therefor and, although the lease recites the payment of a consideration of $1, none in fact was paid, and the contract is without consideration and void. She alleges her faith and confidence in Dwight in making the contract with him, and that assuming the lease and party thereto were of his procurement she did not scrutinize the same very closely; that she has since learned it is not the kind and character she had agreed to execute and the one that she thought she had executed; the one she executed was for five years, the one she had agreed to execute the consideration was to be $38 cash paid for the first year, the one executed was for $1 for the first year, and in many other respects the lease is different from the one she had agreed to execute; that, had she known of the conditions the lease contained, she would not have executed it. She alleges also that she received a letter with the lease from appellee, in which appellee stated in substance that the lease would not be put of record until work should begin on some well on some of the leases, and it would be held in escrow with all other leases; that this promise in part induced her to agree to the lease; that the lease was in fact placed of record by the appellee after she had notified him of the mistake and conditions under which it was made. She then alleges that she executed therefor a lease to one Jeffries on the 8th of March, 1919, for the consideration of $38 for the term of two years; that Jeffries was the person to whom Dwight intended that she should execute the lease. She prayed for cancellation of the lease executed to appellee, etc.

A general exception was presented to the petition, which the trial court sustained, and upon appellant's further declining to amend judgment was rendered for the appellee, to which action appellant excepted and from which this appeal is prosecuted.

The first and only assignment is that the court erred in sustaining the exception. The proposition urged under this assignment is that one person contracting with another, believing he is contracting with a different person, the contract so made is void and unenforceable.

[1] The mistake alleged is clearly unilateral on the part of Mrs. Price. It is not shown that in making the contract with Biggs there would be any loss to the appellant by reason of the fact that he was the lessee, rather than the undisclosed proposed lessee of Dwight. In other words, it is not shown that the contract as made is vitally affected by reason of the fact that it was to one person rather than another. The allegations show that the name of the person making the contract was not considered material at the time of executing the contract. The mere fact in dealing with Biggs Mrs. Price thought she was dealing with Dwight's undisclosed purchaser, there being no misrepresentation, and the contract having been fully entered into and its terms agreed upon, would not afford grounds for canceling the contract. Or, stated differently, the identity of the lessee was not of the essence of the contract. Black on Rescission and Cancellation, vol. 1, § 138; Weber v. Hearn, 49 App. Div. 213, 63 N. Y. Supp. 41; Cole v. Hunter Tract Improvement Co., 61 Wash. 365, 112 Pac. 368, 32 L. R. A. (N. S.) 125, Ann. Cas. 1912C, 749. "The generally accepted rule is that a rescission cannot be enforced or ordered on account of the mistake of one party only, which the other did not share, but for which he was not responsible, unless some special grounds for interference of a court of equity can be shown." Black on Rescission and Cancellation, vol. 1, § 128; R. C. L. vol. 6, "Contracts." § 42, p. 623. This is substantially the rule in Texas. Horan v. Long, 11 Tex. 230; May v. S. A. & A. P. Ry. Co., 83 Tex. 502, 18 S. W. 959; Railway Co. v. Burns, 63 S. W. 1035; Insurance Co. v. Jones, 32 Tex. Civ. App. 146, 73 S. W. 978; Law Reporting Co. v. Texas Grain, etc., 168 S. W. 1001; Finks v. Hollis, 38 Tex. Civ. App. 23, 85 S. W. 463; Oil Co. v. Early-Foster Co., 204 S. W. 1180, and authorities cited. The petition alleges, in effect, the lease was sent to Mrs. Price for

her signature, and that she read it. We believe she should be held to have known to whom it was made. Biggs did not represent or pretend to be a client of Dwight or that the contract was to carry out the terms which appellant had made with Dwight. The petition leaves it clearly inferable he knew nothing of the negotiations between appellant and Dwight. Mrs. Price does not pretend she did not read the contract; if she did, she knew the consideration recited therein. The fact that the contract is not as favorable for appellant as the one alleged to have been made with Dwight is no reason for canceling the contract with appellee. She alone knew the contract with Dwight when she signed and acknowledged the contract in question, and should not have signed it if it was different from the other and against her interests. We think she alleges no equity entitling her to cancellation.

[2-4] There is no assignment or proposition briefed attacking the lease, because there is no consideration or that the covenants resting upon the appellee to be by him performed are inconsistent or contradictory and for that reason the lease is nonenforceable or invalid. But, upon the presentation of this case upon submission, the appellant, by counsel, in oral argument, suggested that such covenants are so inconsistent with each other as to destroy them as a consideration for the contract for the lease, and appellant also filed a brief written statement to that effect. If the lease was void because it shows it was without consideration as the pleadings set out the contract in hæc verba, it was fundamental error, apparent of record, on the part of the court, to sustain a general exception to the petition. Grayson County v. Harrell, 202 S. W. 160. The covenants to be performed by the lessee would appear to be an obligation on the part of the appellee within a given time to begin and prosecute the work of mining. This would make the obligations mutual and not unilateral, and would not affect the right to forfeit if the conditions were not fulfilled as stipulated. The question would become one of forfeiture of a conditional grant, rather than the validity of an optional contract. This lease appears to fall in a class with the one discussed in the case of Great Western Oil Co. v. Carpenter, 43 Tex. Civ. App. 229, 95 S. W. 57, and on this proposition we also cite Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717 (3), L. R. A. 1917F, 989. It appears to be appellant's contention that the covenant to begin operation in drilling on the land leased or the community lands in the immediate vicinity by April 1, 1919, and to be prosecuted with diligence, etc., is inconsistent and contradicts the clause which provides that the consideration for the lease and for all of the common leases is the cov-

enant to begin actual development on some part of the leases within 12 months; also, that the provision calling for a well in the immediate vicinity means within 15 miles of some portion of the land in question is unreasonable and inconsistent with the covenant to put down a' well in the immediate vicinity.

[5, 6] "Where two clauses are inconsistent or conflicting they must be construed so as to give effect to the intention of the parties as collected from the whole instrument." Apparent conflicting clauses must be reconciled by a reasonable interpretation. If there is a variance, the one which contributes most essentially to the contract is entitled to the most consideration. "Where two clauses are so repugnant that they cannot stand together, the first will be retained and the second rejected, unless the inconsistency is so great as to avoid the instrument for uncertainty." 13 C. J. "Contracts," § 497, p. 535; Stone v. Robinson, 180 S. W. 135; Broocks v. Moss, 175 S. W. 791; Thompson v. Waits, 159 S. W. 82. We believe the clauses may be reconciled by construing them to mean that the work must be begun by April 1st, and that such date would be within 12 months in the meaning of the contract; at least, they can be reconciled in that way. The first clause can be held to control and the latter be rejected, if necessary. We do not think the clauses are so plainly contradictory that they mutually destroy each other, rendering the instrument void. The first clause might be interpreted as a covenant to begin work by April 1st and not a condition forfeiting the lease in case of a failure. The right of forfeiture would appear in this clause to refer to the failure to begin a new well in 30 days after the first one begun has been abandoned. The second clause may be held a condition requiring work to be begun in 12 months and prosecuted with diligence, and if no oil is found, or if development is stopped for 90 days, the lease is null and void. We suggest this interpretation as illustrating that the clauses are not so plainly contradictory as to require a holding that the lease is void. It is not our purpose at this time to hold that this is the true interpretation of the two clauses. The contention is made that within 15 miles of any portion of the land described in the lease is not in the immediate vicinity thereof and contradicts the covenant that a well shall be put down in the immediate vicinity. We believe, as the parties to the lease define what they meant by immediate vicinity as being in 15 miles of the land, their agreement or contract with reference thereto forecloses inquiry by the court as to what was meant by immediate vicinity. This interpretation placed by the parties on the term

(217 S.W.)

is not so unreasonable that a court can as a matter of law declare the contract void.

We have discovered no error, and none has been pointed out by appellant.

The judgment will therefore be affirmed.

---

⊝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes