## HYND v. SANDLER et al.

No. 11974.

Court of Civil Appeals of Texas. Dallas.

May 2, 1936.

Rehearing Denied June 5, 1936.

Chas. F. Umphress, of Dallas, and Hiner & Pannill, of Fort Worth, for plaintiff in error.

Thompson, Knight, Baker & Harris, of Dallas, for defendants in error.

LOONEY, Justice.

Defendants in error (hereinafter referred to as plaintiffs) attorneys residing in Buffalo, N. Y., brought this suit against Alexander C. Hynd, plaintiff in error (hereinafter referred to as defendant) also a resident of Buffalo, to recover fees for professional services rendered. Hynd appeals from an adverse judgment. As the decision turns largely on the meaning of the writings involved, the attendant facts and circumstances, that is, the setting of these writings, will be stated somewhat at length.

Alexander C. Hynd and one R. W. Perkins agreed verbally to form an adventuring partnership; Hynd furnished the money with which Perkins purchased and developed certain oil leases situated in Gregg county, Tex. Hynd claimed that later he was induced, by fraud and deceit practiced upon him by Perkins, to sign a writing materially variant from the verbal agreement under which the venture was begun. Becoming dissatisfied, Hynd consulted his regular attorney, who advised against litigation with Perkins, but later Mr. Karl Goldman (one of the plaintiffs) was consulted by William A. Hynd, son of defendant, in regard to the matter, and, after several conferences, the parties met at the home of the elder Hynd, where a verbal understanding was reached, to the effect that Goldman and his associates (plaintiffs) would make the necessary investigation and represent Mr. Hynd in any litigation that might ensue, for which he agreed to pay a contingent fee of one-third of every-thing recovered, including money, personal property, and mineral leases; the expenses of the litigation, other than court costs, were to be borne equally by Hynd and the attorneys. No writing was entered into at the time, but later William A. Hynd, son of defendant, signed a letter addressed to Goldman, styled "Retainer," stating that, "In accordance with our conversation, I hereby agree to retain you as my attorney, relative to the contemplated action which I hereby authorize you to institute on behalf of Alexander C. Hynd * * * against R. W. Perkins * * * and for such purpose to engage such attorneys or counsel as you may deem to be necessary, and in such courts as you and your counsel may deem proper." The matter of compensation was mentioned in this letter, as follows: "Realizing the unusual amount of effort, work, and legal skill to be involved, I do hereby agree that you shall receive for the period of one year from the date hereof one-third 'of any and all moneys, settlements, and liquidations received by the said Alexander C. Hynd with reference to the above matter, and further agree that such distribution will take place with you when and as any such sums are forthcoming. I do further agree that if, as the result of your efforts, any settlement is received in the way of an accounting by said R. W. Perkins, that you will receive a one-third part of our interest in and to the same. And I further do hereby agree that I will not discharge you during the running of this contract of retainer, and that in the event of any discharge that you will still be entitled to the same remuneration as aforementioned. Dated, Buffalo, New York, September 3, 1932." The purpose of this letter was to state in writing the verbal agreement of the parties.

Following these proceedings, Mr. Daniel D. Sandler, one of Goldman's associates, came to Texas in company with William A. Hynd, and after an investigation, employed George W. Hutchison and W. B. Hamilton, practicing attorneys of the city of Dallas, Tex., to institute and prosecute a suit, on behalf of defendant against Perkins and others, agreeing to pay said attorneys "10% of such sum or sums of money, leases and/or equipment and/or other properties as may be received, by compromise or collected by suit." This contract of employment was ratified by Hynd. The Texas attorneys instituted suit against Perkins and others in the United

States District Court, for the Northern District of Texas, setting up, among other things, the original partnership agreement between Hynd and Perkins; alleging that Hynd furnished the money with which Perkins purchased certain oil leases in Gregg county and certain equipment, describing same; alleged that three producing wells were brought in, and that thereafter, through fraud and misrepresentation, Perkins induced Hynd to sign an instrument, misstating his interest in the partnership and assets belonging thereto, and therefore that Hynd, electing to terminate the partnership, sought settlement of the partnership and the establishment and recovery of his interest in the assets belonging thereto. This suit was settled, and a compromise judgment entered February 27, 1933, giving Hynd the right to collect from oil runs of one well, the sum of $12,-500; full title to a six-acre lease, the equipment, appurtenances, and improvements pertaining thereto, and a working interest in an oil well located thereon, except certain interests theretofore sold to outside parties; also giving Hynd a definite interest in the proceeds of oil runs then in the hands of certain pipe line companies.

To this juncture in the affairs, the parties operated under the verbal agreement and the letter of September 3, 1932, signed by William A. Hynd addressed to Goldman, but after the compromise on June 13, 1933, a more formal agreement was entered into; but it is our opinion that no material conflict is presented, that is, the original verbal agreement, the letter by William A. Hynd, and the agreement last mentioned, are in substantial accord. Following a somewhat lengthy preamble, the paragraph of the agreement of June 13, 1933, dealing with the subject of compensation reads: "Fourth. Realizing the unusual amount of effort and work involved in this matter, the party of the first part does hereby agree to pay to the party of the second part as his remuneration one-third of any and all moneys, settlements and liquidations heretofore and/or hereafter received by said party of the first part arising in any manner from the transaction aforementioned, distribution to take place when and as the same is forthcoming; the party of the second part shall receive as a part of the proportion above stated, one-third net in and to all moneys received as income from the wells involved herein; this remuneration is to continue for the period of one year

from the time that any settlement was made. The aforementioned compensation shall include all moneys, leases, equipment and properties received by compromise or otherwise. Fifth, The parties hereto further agree that out of the aforementioned one-third, so long as the same is paid to party of the second part, shall be paid the compensation of the aforementioned George W. Hutchison and W. B. Hamilton, and that the total charge to be made to the party of the first part shall be only one-third and that the compensation of said counsel last mentioned shall not be considered in addition to the compensation agreed upon as the compensation of the party of the first part. This supersedes and replaces any and all agreements, retainers and understandings between the parties, and sets forth the full terms and agreement."

When approached for settlement, Hynd refused to allow the attorneys one-third of all properties recovered, insisting that they were only entitled to one-third of the revenues for a period of one year, and denying their right to a continuing interest in the leasehold estate recovered; thereupon the attorneys instituted this suit, to establish and recover their alleged interest in and to one-third of all properties recovered, including the leasehold estate.

The case was tried without a jury; the trial judge filed findings of fact and conclusions of law, concluding, among other things, that "The verbal agreements between W. A. Hynd, acting for A. C. Hynd, with Karl Goldman and with Karl Goldman and D. D. Sandler preliminary in each case to the written contracts in evidence herein were as claimed by plaintiffs in their evidence herein, and if the written contracts failed to express such verbal agreements, such failure was due to mutual mistake of the parties. * * *" In his conclusions of law, the judge held that, "Under the written contracts in evidence, plaintiffs are entitled to recover as shown in decree entered herein. If the written contracts or any of them are not in accord with the verbal agreements between William A. Hynd, acting for A. C. Hynd, and the attorneys, or any of them, which preceded the written contracts, such variance was due to mutual mistake and draftsmanship errors of the parties and the instruments in question should be reformed and, as reformed, enforced herein and decree as shown herein entered," thereupon, the court rendered judgment in favor of

plaintiffs for an undivided one-third interest in a seven-eighths leasehold estate in a certain six-acre tract of land situated in Gregg county, Tex., together with a like interest in all appurtenances, equipment, and improvements and oil and gas well thereon, and in the oil and gas thereafter produced therefrom, subject to certain outstanding interests; also an undivided one-third interest in and to a certain oil payment in the sum of $12,500, from a well on another leasehold situated in said Gregg county; also one-third of all oil, money, or credits from previous oil runs, then in the hands of certain named companies.

A contention of. the defendant on appeal is that, in so far as the judgment appealed from awarded plaintiffs one-third of the mineral leasehold estate, the same is erroneous, should be reversed, and, in that respect, rendered in his favor. The argument is that, when considered together, the agreements are plain and unambiguous, restricting the compensation of the attorneys to one-third of the personal property, and one-third of the net income from the leasehold estate recovered from Perkins, for a period of one year.

■ We cannot accept this construction of the writings. While there is no direct explanation of the provision in the letter from William A. Hynd to Karl Goldman, of September 3, 1932, agreeing, for a period of one year from that date, to pay the attorney one-third of all moneys, settlements and liquidations received by Alexander C. Hynd from these properties, yet, in view of the attending facts and circumstances, we think the conclusion not only reasonable but inescapable that this "one year period" provision was intended as a retainer in lieu of cash, as Mr. Hynd was unable to pay a cash fee, but, admittedly, was then entitled to receive income from these properties, and from this source Goldman was to be paid one-third over a period of one year. We do not think this provision had any reference to properties that might be recovered from Perkins as the result of the efforts of the attorneys, in regard to which the letter reads: "I do further agree that if, as the result of your efforts, any settlement is received in the way of an accounting by said R. W. Perkins, that you will receive a one-third part of our interest in and to the same." The attorneys were to receive a twofold compensation, that is, were to be paid, over a period of one year, one-third of the amount received by Hynd from the properties to which he was then entitled, in lieu of a cash retainer, and also were to receive one-third of all properties, of whatever nature, recovered as the result of their efforts.

The agreement of June 13, 1933, was executed several months after the suit in the federal court was compromised, under which Hynd recovered a leasehold estate of six acres, a producing well, and certain equipment and appurtenances thereon; $12,500 in oil runs from a second well, and a definite interest in the proceeds of oil runs then in the hands of certain companies. This latter agreement referred to the retainer agreement of September 3, 1932, also the employment of Hutchison and Hamilton, and ratified the acts of the parties thereunder. The compensation of the attorneys as restated in paragraph 4, paraphrased, reads: "Parties of the first part agree to pay parties of the second part one-third of any and all moneys, settlements and liquidations heretofore and/or hereafter received by party of the first part, arising in any manner from the transaction aforementioned, including all moneys, leases, equipment and properties received by compromise or otherwise, distribution to take place when and as the same is forthcoming, and as a part of the proportion above stated shall receive, for the period of one year from the date of settlement (February 27, 1933) one-third net of all moneys received as income from the wells involved."

The contention of counsel for Hynd that the one-year limit is applicable, not only to income from the wells, but also to the fruits of the litigation other than income, is, in our opinion, a strained construction. Whatever ambiguity that may exist in regard to the provision for payment of net income over a period of one year, does not, in our opinion, affect the rights of the attorneys to a one-third interest in the leasehold estate. So we conclude that, even if it can be correctly said that the provision for the payment of income, over a period of one year, in its setting is ambiguous, the ambiguity is immaterial, as counsel for defendant do not contend that the judgment is erroneous in any respect other than in allowing plaintiffs a one-third interest in the leasehold. This being true, we do not deem it necessary to discuss the question of such ambiguity, even if it exists. Our view in regard to this matter is strengthen-

ed somewhat by the provision in the fifth paragraph of the agreement of ·June 13, 1933, wherein the attorneys obligated themselves to pay out of their one-third interest the compensation due Hutchison and Hamilton. Under their contract, Hutchison and Hamilton were entitled to "10% of such sum or sums of money, leases and/or equipment and/or other properties as may be received by compromise or collected by suit"; this interest was absolute and not limited to a period of one year. It follows that this obligation to Hutchison and Hamilton could not have been discharged by the attorneys, in kind, unless they too were entitled to one-third interest in the same class of properties.

But, even if the construction of the agreement contended for by the defendant should be held correct, nevertheless, plaintiffs are entitled to a one-third interest in the properties recovered, including the leasehold estate, inasmuch as the recovery was had within one year from the date of their employment: the employment being on September 3, 1932, and the compromise judgment was rendered in the federal court on February 27, 1933, establishing the rights of the parties.

█ It is also insisted that, as the leasehold is real estate, the written agreement of employment failed to describe or identify the particular estate in land sought to be recovered; therefore, was insufficient to support the recovery. While it is true, a mineral leasehold is regarded as real estate and that a contract for the sale and conveyance of such an estate must either describe the property, or by reference furnish means of identification, yet, we do not think the contract sued upon is of that nature. The contract was for the employment of an attorney on a contingent basis, the attorney to receive one-third of the recovery on the partnership settlement. At the time the contract was made it was impossible to know or describe the portion of the assets that, on settlement, would belong to either partner. The interest of each partner was in the net after partnership debts and liquidating expenses were paid. The circumstances—that in liquidating the partnership affairs specific properties instead of cash were allotted to each partner—does not affect the right of the attorneys to recover their interests in the portion allotted to their client. This is not the ordinary suit to recover title to or an interest in a mineral leasehold, nor a suit

for specific performance of a contract to convey; but is a suit by an attorney to establish and recover the interest in the fruits of the litigation resulting from his labor which his client agreed to pay. The statute of frauds has no application, as it deals only with sales of real estate or leases for a longer period than one year; the interest of the attorneys in the fruits of the litigation resulted neither from sale nor lease. In Phœnix Land Co. v. Exall (Tex. Civ.App.) 159 S.W. 474 (error ref.) the court held that it was not necessary for an agreement to acquire lands jointly to be in writing; and in Scales v. Grassman (Tex.Civ.App.) 261 S.W. 215 (error ref.); Id. (Tex.Civ.App.) 264 S.W. 136, the court held that the statute of frauds has no application to an oral partnership agreement, contemplating the acquisition of lands. But, if a description of the leasehold estate was essential to the validity of the contract, we are of opinion that the description in the agreement of June 13, 1933, by reference to the recovery in the federal court, was sufficient. The agreement mentioned property previously recovered for Hynd by Goldman and associates under their original agreement, and plaintiffs' pleading had attached to it a copy of the agreement of June 13, 1933, also a copy of the decree rendered in the federal court, giving a description of all properties recovered.

█ Considered in the light of the attending facts and circumstances, we do not think the written agreements of September 3, 1932, and June 13, 1933, are either uncertain or ambiguous, but, even if so considered in respect to the provision for the payment of net income over a period of one year, yet, in their leading characteristic, that is, in respect to the agreement to pay the attorneys one-third of any and all properties, including leases, equipment, etc., recovered, in our opinion there exists neither uncertainty nor ambiguity. The doctrine, well supported by authorities, is announced in 10 Tex.Jur. (Title, Contracts) page 311, § 179, that: "* * * Provisions in a contract which are apparently conflicting are to be reconciled and harmonized, if possible, by any reasonable interpretation, and the contract as a whole given effect. To determine whether this can be done the court will look to the entire instrument, in the light of the attending circumstances. In case of a variance between clauses, the one which contributes most es-

sentially to the contract is entitled to the most . consideration. * * *"

In several assignments, the contention is urged that the plaintiffs were not entitled to reformation of the written agreements on the theory of a mutual mistake, and that in so far as the judgment is based on that idea, it is erroneous and should be set aside.

Reformation of the writings, based upon the allegation of a mutual mistake, was only sought in the alternative, and the court found that if the writings failed to express the verbal agreement of the parties, that such failure was due to mutual mistake. In this connection the court said: "* * * This court has not considered any evidence of verbal agreement or any other agreements by A. C. Hynd acting for himself with plaintiff, or any of them, but has solely considered agreements between W. A. Hynd, acting for A. C. Hynd, and the attorneys." Hence, we think it apparent that the judgment was not based upon reformed instruments, but upon the court's construction of the writings, as reflecting the agreement of the parties. The most the findings and conclusions of the court reveal in regard to the alternative issue is that the court found the facts sufficient to show a mutual mistake, and, if necessary, would have reformed the writings accordingly, but this was not done. We assent to the conclusions reached by the trial court, and do not deem it necessary to discuss this question further.

 It is also insisted that if the agreement of June 13, 1933, is construed as granting plaintiffs compensation in addition to that provided in the agreement of September 3, 1932, the former is without consideration and against public policy.

The compromise and recovery of properties produced a new situation; both Hynd and the attorney then had a continuing interest in realizing on the specific properties recovered, in the way of accountings and settlements with pipe line companies for oil previously run, also for subsequent runs, and in disposing of the equipment and other personal properties recovered. The attorneys had collected nothing under the provision in the agreement of September 3, 1932, providing for payment, over a period of one year, of one-third of all moneys, settlements, etc., received by Hynd; so the agreement of June 13, 1933, provided that, over a period of one year from the date of settlement (February 27, 1933) the attorneys should have one-third of the net income from the oil wells; and, in turn, they obligated themselves, from their one-third interest in the properties, to satisfy Hutchison and Hamilton, who owned a 10 per cent. interest therein. The facts, in our opinion, show ample consideration for the execution of the instrument of June 13, 1933, which not only brought forward and in substance restated the original agreement of the parties, but contained additional features, justifying the execution of the instrument. Aside from this, however, defendant did not deny under oath the execution by himself, or his authority of either of the written instruments sued upon; nor did he plead under oath that the instruments, or either of them, was without consideration, hence the issue of want of consideration was not properly before the court for consideration. Article 2010, R.S.1925.

We have duly considered all assignments, and finding no reversible error, the judgment of the court below is affirmed.

Affirmed.