## HOUSING AUTHORITY OF CITY OF SAN ANTONIO v. NEWTON.

### No. 2930.

Court of Civil Appeals of Texas. Waco.

Dec. 14, 1950.

George R. Thomson, Woodville J. Rogers, San Antonio, for appellant.

Archer, San Miguel & Cadena, San Antonio, for appellee.

LESTER, Chief Justice.

The parties will be designated as in the lower court. The plaintiff below, Jessie I. Newton, sued the defendant, Housing Authority of the City of San Antonio, to recover accumulated annual leave pay for 34 days alleged to be due him as a former employee.

Plaintiff pleaded that on the 22nd day of July, 1940, he was employed by the defendant as manager of Victoria Courts located in the City of San Antonio, and according to the terms of his contract of employment he was to receive the sum of $315.00 per month and was to work five days per week, and in addition he was to receive 1¼ days per month or 15 days per year as annual leave under such contract of employment; that he had a right to accumulate annual leave pay up to and including 60 days; that he was employed by the defendant continuously from July 22, 1940 to the 19th of October, 1949; that he had not taken any annual leave during said period and that by reason thereof he had to his credit 60 days at the time he was discharged on October 19, 1949. He also pleaded that it was the general custom and policy of the defendant to allow its employees annual leave and to allow the accumulation of such annual leave; that such policy, custom and usage was well established and well known to both parties and the parties contracted with reference thereto.

The defendant pleaded a general denial, the two and four years statutes of limitation, and further pleaded that there was no written contract of employment between the plaintiff and defendant; that plaintiff's contract of employment was by resolution of the Board of Commissioners of defendant, which was subject to be altered, amended and changed at the will of the defendant, and at the time plaintiff was first employed there existed no regulations or rules of the defendant permitting vacations or annual leaves with pay but thereafter the plan was inaugurated as a mere gratuity.

At the close of the evidence the defendant moved for an instructed verdict, which was overruled by the court. The court submitted the case to the jury upon one issue, as follows: "Do you find from a preponderance of the evidence that the defendant prevented the plaintiff from taking his full accumulated earned annual leave during the period from July 22, 1940, to October 19, 1949?" to which the jury answered: "Yes". The above issue was submitted over many objections of the defendant.

The evidence shows that the plaintiff went to work for the defendant on July 22, 1940, as an investigator, at a salary of $150.00 per month. He worked at this position for some time, then he was transferred to the Brooks Homes to open up that project. The plaintiff says in this position he was to receive $175.00 per month plus annual leave. On April 20, 1942, by a resolution of the Board of Commissioners of the defendant he was appointed resident housing manager of Brooks Homes without a change in salary of $175.00 per month, effective as of the date of April 16th. On June 25, 1942, the defendant adopted a resolution in which the plaintiff was transferred to and appointed resident manager of Victoria Courts at a salary of $250.00 per month, to become effective as of July 1, 1942. On June 17, 1948, the Board of Commissioners adopted a resolution in which the plaintiff's and other employees' salaries were increased and plaintiff's salary was raised from $300.00 to $315.00 per month, and this resolution included the following paragraph: "Be It Further Resolved: That such increases in salary are given to and accepted by the above mentioned persons with the distinct understanding that their services may be terminated at any time without prior notice and without liability of the Authority for the payment of salary or other compensation subsequent to the effective date of the termination of their services."

In these resolutions the question of annual leave is not mentioned. Plaintiff introduced in evidence a resolution of the Commissioners in which they provided for annual leave. The first was adopted the 19th of September, 1940, and provided:

"(a) The regular hours of work shall be 44 hours per week. Employees required to work overtime in excess of a total of 4 hours in any one week shall be entitled to an equivalent number of hours of compensatory leave within the next two weeks.

"(b) Annual leave with pay shall be granted, accumulating at the rate of 1 day for each full calendar month of employment for any tenure of employment of 90 or more consecutive calendar days. Accumulated annual leave in excess of 6 days shall not

be carried over from one calendar year to the next, and in no event shall accumulated leave exceed 18 days."

Plaintiff introduced in evidence a resolution of January 25, 1945, effective as of January 1, 1945, which provided:

"Section 3. For permanent employees working 44 hours or more per week, annual leave with pay may be allowed, accumulating at the rate of 1-1/4 days for each full calendar month of employment for any tenure of employment of 90 or more consecutive calendar days. Requests for annual leave shall be submitted to and approved by the Housing Manager or Executive Director prior to the beginning of the leave. Accumulated annual leave in excess of 15 days shall not be carried over from one calendar year to the next. When an employee is furloughed or separated from service without prejudice, he or she may be continued on the payroll for the time equivalent to the annual leave accrued and not previously taken. The accrual of any annual or sick leave shall cease with the last day of actual work.

"Exception shall be made in the above for the year of 1944 only, permitting any annual leave due and not taken at the end of the year of 1944, to be carried over into the year of 1945, providing the total does not exceed 60 days and providing the aggregate shall not exceed 60 days at any time during 1945. (This is permitted for the reason that employees of the Authority may not have had an opportunity to take their annual leaves during the years of 1943 and 1944).

"Section 6. The adoption of this policy supersedes any and all resolutions, rules and regulations in conflict herewith, and these regulations shall be effective as of January 1, 1945."

The evidence clearly shows that the plaintiff's contracts of employment in the various positions that he held were by resolutions of the Board, and none of them provide for annual leave or the accumulation thereof. The plaintiff testified that he had a conversation with Ray Mackey, who was Executive Secretary, at the time he was employed to open the Brooks Homes. He said Mackey told him the position would pay him $175.00 per month but he wanted more money, and Mackey said: "You will get your accumulated leave out there, which will run this to $225.00 or $231.00 per month." However, thereafter the plaintiff was given different and higher positions at higher wages at various times, and all these were effected by resolutions of the Board of Commissioners of the Housing Authority and nothing therein contained conferred upon the plaintiff the right to accumulate annual leave. The resolutions of the Board of Commissioners introduced in evidence by the plaintiff show that the Board at various times changed the number of days that an employee could accumulate as annual leave during the period of a year, and the number of days that could be carried over from one calendar year to another. If Mackey had the authority to make the above representations, which is not shown, the plaintiff failed to show that he accumulated any annual leave while he was employed under the contract of employment to open the Brooks Homes. Therefore, we are of the opinion that plaintiff wholly failed to establish that he was entitled to recover anything by reason of the statements of Mackey.

The evidence shows that the tenants of the defendant had to be re-examined once a year as to their income and family status to determine whether they were qualified to remain as tenants. The re-examination of the tenants was one of the duties required of the plaintiff. Plaintiff testified that he made two requests for his 60 days accumulated annual leave during the year of 1945, in May and about the 1st of October. He says these requests were refused by the Executive Director. The plaintiff gave no reason why his May request was refused but when asked for what reason his October request was refused he testified that:

"We were beginning to make re-examinations of all the tenants in the courts and I personally examined every one of them. There were 800 of them.

"Q. Did he say that was why you couldn't take it? A. Yes, he said we were over worked.

200

"Q. Did he make any statement about you would lose your leave or anything about the resolution? A. I asked him that on account of us having some difficulty—would that have any effect and he said, No, he was sure I would be protected—either get me the money or be protected later on.

"Q. Did he tell you you could get it? A. Yes."

Plaintiff further testified that he and the Director had previously had some difficulty. The record is silent as to why the plaintiff did not take his accumulated annual leave in 1944, or that he made any request therefor, or that he made any other request in 1945 except in May and about the 1st of October. The record is also silent as to any request of the plaintiff to take his accumulated annual leave during the years of 1946, 1947, 1948 or 1949. If the matter was ever mentioned after his October request was refused the record fails to reveal it until after plaintiff was discharged on October 19, 1949; at which time he was paid the salary that was due him plus 15 days, his accumulated annual leave carried over from 1948, and 11 days accumulated during the year of 1949. Then he demanded pay for the 34 days that had accumulated prior to January 1, 1945, and filed suit for the same on November 21, 1949.

■ Plaintiff testified that he knew of and was familiar with the resolution passed in January 1945, by the Board of Commissioners; which provided that accumulated annual leave in excess of 15 days could not be carried over from one calendar year to the next. He says that the Director told him that he was sure he would be protected and either get the money or be protected later on. The business of the defendant is conducted by a Board of Commissioners, which has the authority to appoint agents possessed of such power as the Board sees fit to delegate to them, as provided by Article 1269k, Sec. 5, Vernon's Ann.Civ. Stats. The Board appointed Brown as Executive Director. If his oral statement to the plaintiff in October, 1945, that he was sure that the plaintiff would get the money

or be protected later on could be construed as a contract upon the part of said Brown, there is no evidence of his authority to bind the defendant. But if he did have such authority, and if plaintiff had pleaded said promise as a basis for recovery, which he failed to do, there was no date or time fixed as to when the contract was to be performed. It is presumed that it would be performed within a reasonable time from the making thereof. Ordinarily, what constitutes a reasonable time is a question of fact, but when the facts are admitted or undisputed, then it becomes a question of law. Hart v. Bullion, 48 Tex. 278; McGary v. Campbell, Tex.Civ.App., 245 S.W. 106; Potter County v. Boesen, Tex.Com.App., 221 S.W. 948. All of the testimony concerning this point is that given by the plaintiff, wherein he testified as follows:

"Q. Now, these 60 days annual leave that you say you had accumulated in 1945, I believe you testified that you were familiar with the resolution passed by the Board January 1, 1945? A. Yes, sir.

"Q. And you are familiar with the fact that this resolution—the requirement that those who had accumulated leave in 1944 to the extent of 60 days were required to take it in 1945? A. That's right.

"Q. And you knew that? A. Yes, sir.

"Q. And you knew by that that if you didn't take your leave in 1945 for any reason that you waived it? A. I knew I would lose my job if I went over the executive director's head.

"Q. Well, you knew you either had to take your leave or you didn't get it? A. Yes.

"Q. You knew the only way you could get pay for that 60 days in 1945 was to quit? A. Not if the executive director told me it would be looked after. He certainly had some weight with the Board.

"Q. Well, you don't mean to tell this jury that you expected to get paid for your annual leave in 1945 and work at the same time, and get double pay for the sixty days, is that what you are getting at? A. No.

"Q. You knew the only way you could get paid for your annual leave was to quit, didn't you? A. No.

"Q. You mean you understood if a man had 60 days accumulated leave, he could just go on and work and draw his regular salary and then in addition to that draw sixty days pay too? A. That is what they had always done up to that time.

"Q. You worked in 1945, 1946, 1947, 1948 and up to 1949? A. Yes.

"Q. And then after your services were terminated, you filed this suit? A. That's right.

"Q. And what you are claiming now is the sixty days leave accumulated in 1944? A. I am claiming the difference in what they paid me and the sixty days.

"Q. But you are claiming this leave that accumulated to you in 1944? A. That's right—no, the period of 1941 on for that accumulated every year.

"Q. What are you going to do about that resolution in 1945? A. I can't do anything about it. I am not going to do anything about it."

■ Applying this rule and allowing a reasonable time for its performance, we are of the opinion that by reason of plaintiff's conduct in waiting more than four years to bring his suit that his claim is clearly barred by the two years statute of limitation.

■ Plaintiff says that the judgment should be sustained because parties ordinarily contract with reference to the usages or customs of a particular trade or business about which their agreement is made, and that the transaction is prima facie presumed to have been on that basis. The plaintiff pleaded that it was the custom and policy of the defendant to allow its employees to accumulate annual leave up to sixty days and carry it over from one calendar year to another, but he failed to prove said custom was in existence subsequent to 1945. There is no testimony to the effect that the resolution of the Board adopted in January, 1945, had ever been violated in respect to permitting accumulated annual leave in excess of 15

days to be carried from one calendar year to the next.

The judgment of the trial court is hereby reversed and judgment is here rendered for the defendant.