**RIDGLEA INTERESTS, INC., et al.,**
Appellants,

v.

**GENERAL LUMBER COMPANY, Appellee.**
No. 16159.

Court of Civil Appeals of Texas.
Fort Worth.
Jan. 13, 1961.

Rehearing Granted Feb. 10, 1961.

Rehearing Denied March 10, 1961.

———◆———

Thompson, Walker, Smith & Shannon; Brewster, Pannell, Leeton & Dean, and Henry E. Kerry, Fort Worth, for appellants.

Cantey, Hanger, Johnson, Scarborough & Gooch, Frank E. Crumley, Edward L. Kemble and John McBryde, Fort Worth, for appellee.

BOYD, Justice.

Ridglea Interests, Inc., A. C. Luther and wife, Nelle M. Luther, and Earl Wilson, Jr., and wife, Nancy Luther Wilson, sued General Lumber Company for damages. The court was of the opinion that the plaintiffs' petition failed to state a cause of action, and that it showed upon its face that the cause of action attempted to be alleged was barred by the four year statute of limitation, and in response to General Lumber Company's motion, the cause was dismissed. The plaintiffs appeal.

On August 24, 1949, appellants, other than Ridglea Interests, Inc., as first parties, who owned part of Block 49, Chamberlain-Arlington Addition to the City of Fort Worth, and appellee, as second party, who owned the remainder of said Block, entered into a written contract, which we designate as Contract A, in substance as follows:

After agreeing to the closing of an alley running east and west through Block 49, and that they would jointly request such closing and jointly take such action as might be required to secure such closing, they agreed mutually to assist in obtaining a rezoning of that part of said Block situated north of said alley to "F Commercial District".

Paragraph 4 of the contract reads as follows:

"Contingent upon closing the above alley and upon a re-zoning of the property north of the alley as 'F Commercial District', the parties agree:

"(a) That Second Party will establish a building line along its property fronting on Camp Bowie Boulevard, 46 feet north of the north curb line of Camp Bowie Boulevard, which said building line shall be made a part of Second Party's application for a change in zoning restrictions, and each party agrees that no building constructed by him shall be located nearer than 46 feet from the north curb line of Camp Bowie Boulevard.

"(b) That should the restrictions on such property be changed to 'F Commercial District', First Parties shall execute to Second Party a general warranty deed covering Lot 13 and the East 9 feet of Lot 12, Block 49, Chamberlain-Arlington Addition, and Second Party will sign, execute and deliver to First Parties a general warranty deed to the West 16 feet of Lot 28, Block 49, Chamberlain-Arlington Addition, both conveyances to take to the center of the alley and both to be made simultaneously within a period of ten days after such change in zoning.

"If First Parties at any stage of the proceedings should elect not to go forward in securing a final judgment re-zoning their property, Second Party may nevertheless enforce an exchange as provided in subdivisions (a) and (b) above, if it shall secure a final order of the Zoning Commission or a final judgment re-zoning its property as above mentioned."

Paragraph 5 is in part as follows:

"The parties agree that each shall be relieved of his undertaking contained in paragraph 4 unless final orders have been obtained closing such alley and re-zoning the property lying north of the alley, as explained in paragraph 4, within two years from the date of this contract, * * *"

In paragraph 8 the parties agreed that "all rights and obligations herein set out shall, subject to the terms, conditions and contingencies of this agreement, inure to the benefit of and be binding upon their heirs, executors and assigns."

In September, 1949, the same parties executed another written contract which we designate as Contract B, which, with the exception of subdivision (a) of paragraph 4, is for all relevant purposes an exact duplicate of Contract A.

Subdivision (a) of paragraph 4 reads as follows:

"That Second Party will establish a building line along its property fronting on Camp Bowie Boulevard, 46 feet north of the north curb line of Camp Bowie Boulevard, which said building line shall be made a part of Second Party's application for a change in zoning restrictions, and each party agrees that no building to be constructed hereafter shall be located nearer than 46 feet from the north curb line of Camp Bowie Boulevard, or nearer than the distance from the southeast corner of the building heretofore constructed on Block 49 by First Parties, to the north curb line of Camp Bowie Boulevard, should such distance be less than 46 feet."

After the execution of the contracts, Ridglea Interests, Inc., acquired the interest of Nancy Luther Wilson and husband in Block 49.

The alley which was referred to in both contracts was closed by proper authority on February 15, 1950. The parties obtained a re-zoning of the property north of the alley to "F Commercial District" on July 18, 1951, the application therefor being filed on June 3, 1950, in which all the parties to this suit, as well as other interested persons, joined.

On December 28, 1953, appellants deeded to appellee the land which they agreed to convey and which was described in subdivision (b) of paragraph 4 of both contracts, and on January 4, 1954, appellee deeded to appellants the land which it

agreed to convey and which was described in said subdivision.

Appellee did not establish a building line on its property fronting on Camp Bowie Boulevard, nor did it make a building line a part of the application for rezoning.

On November 18, 1954, appellee sold all of its land in the contracts described to a purchaser who had no knowledge of the existence of either of the contracts, neither of which was ever filed for record. Appellee did not file for record any plat or dedication or other instrument fixing or establishing a building line or in any way give notice of its agreement to establish a building line.

After appellee sold the land an office building was constructed on the property, the south portion of which was and is less than 46 feet north of the north curb line of Camp Bowie Boulevard.

This suit was filed on October 22, 1956. Appellants alleged that by failing to establish the building line, and by selling the land without notice to the purchaser of the existence of the contracts, thus rendering performance impossible, appellee breached the contracts to appellants' damage.

Appellee's position is that the only duty imposed on it by the contracts with reference to a building line was to make such line a part of the application for rezoning, and that, having failed to do so, appellee's breach of the contracts occurred when it failed to make the building line a part of the application for the zoning change; and that appellants' cause of action, if any, arose when that application was filed, or at the latest, when it was granted.

While the question is not free from difficulty, we are constrained to disagree with appellee's construction of the contracts. It seems to be evident that the main purpose of the parties was that appellee should establish a building line 46 feet north of the north curb line of Camp Bowie Boulevard, which obligation was contingent upon the rezoning. The obligation was to do more than to make the building line a part of the rezoning application. We think the provision that the building line be made a part of the rezoning application was subsidiary to the main purpose of establishing the line, which main purpose should control. Hancock v. Butler, 21 Tex. 804; Parrish v. Mills, Tex.Civ.App., 102 S.W. 184; Thompson v. Waits, Tex.Civ.App., 159 S.W. 82, error refused; Price v. Biggs, Tex.Civ. App., 217 S.W. 236; Hynd v. Sandler, Tex. Civ.App., 95 S.W.2d 165; Wilson v. Wagner, Tex.Civ.App., 211 S.W.2d 241; 13 Tex. Jur.2d, p. 323, sec. 142 (10–A Tex.Jur., p. 381, sec. 189); Stockton Savings & Loan Society v. Purvis, 112 Cal. 236, 44 P. 561, 53 Am.St.Rep. 210.

In Morrill & Whiton Const. Co. v. Boston, 186 Mass. 217, 71 N.E. 550, the court considered a contract to "erect and complete" a municipal building, which provided for the kind and quality of materials to be used, including the materials for plastering, and declared that the contractor should " 'furnish and do everything required therefor except the plastering, * * *.' " In holding that the contractor was required to plaster the building the court said: "The main object to be accomplished is stated in section 2, which requires the plaintiff to 'erect and complete a municipal building'; and the careful details provided for the kind and quality of the materials to be used, including those for which this suit is brought, makes it reasonable to suppose that these specifications would not have been originally inserted, and subsequently modified in paragraphs preceding and following the excepting clause, and hence more nearly expressing the final determination of the parties, unless in conformity to such a general design, for where, in a contract like this, a repugnancy is found between clauses, the one which essentially requires something to be done to effect the general purpose of the contract itself is entitled to greater consideration than the other, which tends to defeat a full performance, and repugnant words may be rejected in favor of

a construction which makes effectual the evident purpose of the entire instrument."

"The elementary canon of interpretation is, not that particular words may be isolatedly considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations between the parties, and the intention which they have manifested in forming them." O'Brien v. Miller, 168 U.S. 287, 18 S.Ct. 140, 144, 42 L.Ed. 469.

"In the construction of contracts the object is to ascertain the intention of the parties, and the important question is what the contract means as a whole." McKay v. Louisville & N. R. Co., 133 Tenn. 590, 182 S.W. 874, 875.

"It is better to construe a single clause in an elaborate and extensive contract as an inoperative but harmless provision than to give the clause a construction which renders the whole contract voidable at the option of either party, thus depriving the entire instrument of all finality and legal force." West Heights Realty Corporation v. Adelman, 107 N.J.Eq. 351, 152 A. 196, 199.

We do not understand that appellee claims the cause of action is barred by limitation if the breach occurred subsequent to the filing of the rezoning application, or when it was granted. Having held that appellee's duty was not limited to making the building line a part of said application, we cannot say, as a matter of law, that the breach sued upon occurred more than four years prior to the filing of the suit.

Appellee earnestly insists that the parties specified in the contracts the method of their performance by providing that the building line should be made a part of the application for rezoning, and that all other methods were excluded. The contracts did not say that appellee should establish a building line *by* making it a part of the application. Had the parties so stipulated, and had appellee done so, whether or not the

effort was effectual, a different situation would be presented.

The judgment is reversed and the cause remanded.

## On Motion for Rehearing

█ On rehearing we have discovered that we were in error when we wrote in our opinion that appellee did not contend that appellants' cause of action was barred if the breach occurred after application for rezoning was granted. Appellee did make such contention as an alternative proposition. And a restudy of the case in the light of appellee's motion for rehearing convinces us that we were in error in holding that appellants' cause of action was not barred as a matter of law. Our first impression that a fact question was presented as to a reasonable time for performance by appellee has given way to the conclusion that in this case, with no disputed facts, what was a reasonable time for performance was a question of law for the court. International & G. N. R. Co. v. Pape, 73 Tex. 501, 11 S.W. 526; McGary v. Campbell, Tex.Civ. App., 245 S.W. 106; Housing Authority of San Antonio v. Newton, Tex.Civ.App., 235 S.W.2d 197; 13 Tex.Jur.2d, p. 530, sec. 290.

█ A reasonable time is " * * * such time as is necessary conveniently to do what the contract requires to be done, and as soon as circumstances will permit." Hamilton v. Shirley-Self Motor Co., Tex. Civ.App., 202 S.W.2d 952, 954. "What is a reasonable time depends undoubtedly upon the nature and character of the thing to be done, the circumstances of the particular case, and the difficulties surrounding and attending its accomplishment." Hart v. Bullion, 48 Tex. 278. "The term is a relative one, and its meaning differs according to the circumstances of each particular case, and is to be determined in any case only by viewing the situation confronting and the circumstances surrounding the contracting parties at the time the contract was made, and endeavoring to fix such a time as these

reasonably indicate was within the contemplation and intention of the parties." Alford v. Creagh, 7 Ala.App. 358, 62 So. 254, 257.

Appellants' complaint was that appellee "never established a building line" and "neither instrument (Contracts A and B) was ever filed for record, nor did the defendant ever file for record any character of plat or dedication or other instrument fixing or establishing a building line or gave notice of its agreement to establish a building line."

This suit was filed more than seven years after the contracts were executed, and more than five and a quarter years after the rezoning was accomplished. We believe a reasonable time for performance elapsed more than four years prior to the filing of the suit.

Appellee's motion for rehearing is granted, the judgment heretofore rendered which reversed and remanded the cause is set aside, and the judgment of the trial court is affirmed.